### In the matter of MORGAN, a lunatic.

It is not every case of mental weakness or imbecility which will authorize the court of chancery to exercise the power of appointing a committee of the person and estate; but to justify the exercise of such a power, the mind of the individual must be so far impaired as to be reduced to a state which, as an original incapacity, would have constituted a case of idiocy.

It is not sufficient, upon a commission of lunacy, for the jury to find that the individual proceeded against is incapable of managing his affairs, or governing himself, in consequence of mental imbecility and weakness. To authorize the court to appoint a committee, upon the presumption that his mind is so far impaired as to reduce it to the standard of idiocy, the jury must find distinctly that he is of *unsound mind*, and mentally incapable of governing himself or of managing his affairs.

A COMMISSION in the nature of a writ *de lunatico inquirendo* was issued in this case, to inquire whether S. Morgan, who was alleged to be of unsound mind, was a lunatic or idiot, or of *unsound mind*, and mentally incapable of governing himself and managing his affairs, &c. The jury by their inquisition found that he was incapable of managing his affairs or governing himself, *in consequence of mental imbecility and weakness*, and had been so incapable for two or three years. The jury also found that being so incapable he had, in March, 1838, sold and assigned certain real and personal estate to which he was entitled as the heir and next of kin to a deceased son, of the value of about $2000, for the inadequate price or compensation

of $25. And upon this inquisition an application was made for the appointment of a committee of his person and estate.

*J. A. Guernsey,* for the petitioners.

THE CHANCELLOR. It is probable from the facts stated iu the inquisition in this case, that the individual against whom these proceedings are instituted is a proper subject for a commission, and for the protection of the summary power of this court. It was formerly doubted whether the court could proceed upon a commission which did not find the party to be either a lunatic or an idiot. But at a more recent period, in England it was held that the court had jurisdiction in cases where the mind had become unsound from old age or infirmity, or any other cause of a permanent nature. And this class of decisions was followed by Chancellor Kent in the case of *Barker*, (2 *John. Ch. Rep.* 232 ;) which principle was subsequently adopted by the legislature in the last revision of the laws. (2 *R. S.* 52, § 1.) It is not every case of mental weakness or imbecility, however, which will authorize this court to exercise the important power of depriving a man of his liberty and of the possession of his property. The constitution has wisely provided that he shall not be deprived of either except by due course of law. And many cases may arise in which the mind and memory are so far impaired as to afford grounds for setting aside an improvident agreement made by a person in that situation, upon a bill filed for that purpose, when this court would not have the power to deprive him of the right to the possession and control of his property on the supposition that he was a person of unsound mind. To constitute a case of unsoundness of mind, which will justify the court in taking the person and property of a freeman into its possession and committing them to the custody of another, his mind must be so far impaired that if it had never been elevated above that state of capacity from his birth it would have constituted a case of idiocy. But mental imbecility may exist in various degrees between absolute idiocy and the ordinary state of mental capacity as it exists among mankind in general.

To authorize the court, therefore, to act on an inquisition, upon the presumption that the mind had become so far impaired as to resemble a state of idiocy, the jury should in terms find, as in the case of *Barker* before referred to, that he is of *unsound mind*, and mentally incapable of governing himself or of managing his affairs. If the jury upon their oaths are not able to go thus far, he ought not to be deprived either of his liberty or the control of his property ; neither should he, or those whose contracts with him are overreached by the inquisition, be subjected to the trouble and expense of a traverse.

The finding in the present case does not differ materially from that in *Ex parte Cranmer*, (12 *Ves.* 445,) where it was held that the finding was insufficient. And the case of *Holmes*, (4 *Russ. Rep.* 182,) shows with what strictness the English court of chancery confines the jury to the technical expression of unsoundness of mind alone, in their finding in such cases. For there, although the jury actually found that the party proceeded against was of unsound mind, yet as that finding only appeared to be drawn by the jury as a conclusion of law, from the fact that his memory was from old age and paralysis so much impaired as to render him incompetent to the management of his affairs, Lord Lyndhurst set aside the inquisition, and directed that a new commission should issue. And I agree with him that it is unsafe in such cases to permit a departure from the technical form of finding, that the party is of *unsound mind*, and mentally incapable of governing himself or of managing his affairs. By that finding of the jury the incapacity is found as the result of the unsoundness of the mind, which is a correct legal conclusion ; whereas, in the other mode of finding, the idiocy or unsoundness of mind of the party is not the necessary legal result of mere imbecility of intellect.

The inquisition in this case must therefore be set aside, and a new commission must be issued in the usual form.