### In the matter of Burr, a lunatic.

Where the chancellor becomes satisfied that a person who has been found to be a lunatic, upon an inquisition issued out of the court for that purpose, has so far recovered his reason as to be capable of disposing of his estate, by will, with sense and judgment, he has the power to suspend the proceedings against such lunatic, partially, so as to enable him to make a will.

But the chancellor will direct such will to be made under the superintendence of some proper officer of the court, in order to guard such a testator against the immediate exercise of any undue or improper influence.

The court of chancery has the power to suspend the operation of a commission and an inquisition, in a case of lunacy, so far as to allow the individual, who had bee found to be a lunatic, to make a testamentary disposition of his property; without discharging the proceedings entirely and restoring him to the full control of his property, for every purpose.

THIS was a petition, by Charles Burr, to supersede the commission of lunacy so far as to enable him to make a will disposing of his estate in case of his death. By the death of his father, in 1844, the petitioner became entitled to a very large estate; consisting mostly of personal property. At that time his mind had become so far impaired by irregular habits, and the neglect of those who should have watched over and protected him, that he was found to be of unsound mind, so as to be incapable of managing his person and estate. A committee of his estate was therefore appointed. And the chancellor had directed another person to be appointed the committee of his person, with a liberal allowance to the petitioner for his support and travelling expenses; and with directions to the committee of his person to employ a competent man as a travelling companion, and otherwise to assist in keeping him out of difficulty, and to endeavor if possible, to restore his mind to its former strength and vigor. Burr subsequently presented a petition, accompanied by the affidavits of several respectable men who had been in the habit of seeing and conversing with him for the last two years, stating that his mind was so far restored that he was now competent to make a judicious and valid disposition of his estate by last will and testament; and that he was desirous of disposing of his estate by will in a different manner from that in which it would be disposed of, by law, in

In the matter of Burr.

case he should die without a will. He therefore prayed that he might be allowed to attend in open court, or before some master or other officer thereof, for the purpose of being examined as to the state of his mind and his competency to make a valid will; and that he might be authorized and allowed, under the personal protection and superintendence of the court, or some officer thereof, to make a will, and thereby to dispose of his estate, in such way and manner as he might desire, under and in conformity to the laws of the state; and that the commission nd inquisition &c. might be so far suspended as to allow him to make such will.

THE CHANCELLOR. I have duly considered this petition, and have examined and conversed with the petitioner for the purpose of ascertaining the state of his mind. And I am satisfied his mind is so far restored as to enable him to dispose of his estate by will with sense and judgment; provided he is allowed to do so under the superintendence of some proper officer of the court, to guard him against the immediate exercise of any undue or improper influence. It also appears, from the petitioner's statements as to the situation of his family connections, that all his personal estate, in case of his death without a will, would go to the surviving brother and sister of his deceased mother, as his next of kin; one of whom is a man of great wealth. And there are a great number of first cousins of the petitioner, the children of deceased brothers and sisters of his mother; some of which cousins, as he states, have peculiar claims upon his bounty, on account of the kindness and care which their deceased parents bestowed upon him when he was in a situation to need it. But as the statute of distributions, in this state, does not allow of representation among collateral relatives of the decedent, beyond nephews and nieces, none of his cousins will be entitled to share in his personal estate, if he should die in the lifetime either of his uncle or of his aunt. Although such an event is very improbable, he should unquestionably be permitted to make a will, disposing of his estate

In the matter of Burr.

according to his own wishes, if his mind is not now unsound so as to render him incompetent.

I think the general state of his mind has greatly improved since the finding of the inquisition, in this matter, more than two years since. And if a commission were to be issued against him, at this time, he would not, probably, be found to be a person of unsound mind. But as his mental powers are not yet fully restored to their original strength and vigor, it might not be a discreet exercise of the power of the court now to discharge his committee, and restore him to the entire control of his property, and thereby to leave him exposed to the arts and devices of those who might be disposed to take advantage of the weakness of his mind, to defraud him of his estate.

The only question in this case is as to the power of this court to suspend the operation of the commission, and of the inquisition, so far as to allow him to make a testamentary disposition of his property, without discharging the proceedings against him entirely, and restoring him to the full control of his estate for every purpose. But upon a careful examination of the question, I think the court has the power to discharge the proceedings against him partially; retaining the control of his property so far only as may be deemed necessary to protect the same for his benefit. This has frequently been done by the court in the case of habitual drunkards, who had been found incapable of governing themselves and managing their property, and who were actually endeavoring to abandon their former degrading habits; but who had not yet so far overcome the cravings of their diseased appetites as to render it safe to put their property wholly under their control. The case under consideration is similar in principle; although the petitioner's original incompetency did not arise entirely from his indulgence in the use of intoxicating liquors, but was produced, in a great measure, by other causes, which are now removed.

I shall therefore direct an order to be entered, to discharge the petitioner from the commission and inquisition, and from the control of the committees of his person and of his estate, so far as to permit him to make a will under the advice and

with the sanction of the vice chancellor of the fourth circuit, disposing of his property, or any part of it, after his death, in such manner as he may think proper; which will he is to be at liberty to revoke and cancel entirely without such sanction. But he is not to revoke such will in part, nor make a new will, without the advice and sanction of such vice chancellor, or of one of the justices of the supreme court to be elected under the provisions of the present constitution of this state, until the control of his property shall be fully restored to him, or until the further order of the court.

Such an order will of course be without prejudice to the rights of the petitioner's heirs at law, or next of kin, to contest the validity of his will, if he should make one, and should die leaving it unrevoked. The sole object of the order being to remove the technical objection, that a person who has been found by inquisition to be incapable of governing himself and managing his affairs, is legally incompetent to make a valid will, while his person and property are under the control of the committee appointed by the court.