## SUPREME COURT.

In the matter of Robert Patterson, an habitual drunkard.

As to acts done by a lunatic or drunkard before the issuing of a commission, and which are overreached by the retrospective finding of the jury, the inquisition is only presumptive, and not conclusive evidence of incapacity. But all gifts and contracts made by him after the actual finding of the inquisition, and until he is permitted to resume the control of his property, are utterly void.

While, therefore, the commission remains unrevoked, the lunatic or habitual drunkard cannot make a valid will without permission of the court. The existence of the commission will be held conclusive against the validity of the will.

An application to the court for an order to remove this technical objection is addressed to the discretion of the court, and may be made ex parte, or on notice to the committee and next of kin, as the court shall direct.

*Albany General Term, March,* 1849.—*Before Justices* HARRIS, WATSON, *and* PARKER.   This was an appeal from an order of Mr. Justice Watson denying a motion to set aside an *ex parte* order allowed by him at chambers, suspending an inquisition of habitual drunkenness, &c., against Robert Patterson, so far as to permit him to make a will.

On the 17th of December, 1847, Patterson was found to be incapable of managing his affairs in consequence of habitual drunkenness, and a committee was appointed on the 6th January following.   The order permitting him to make a will was made on the 26th April, 1848, on a personal examination of Patterson, and on several affidavits showing his entire abstinence from the use of liquors since the execution of the commission, and his competency in other respects to make a will, and was made without notice to the committee or next of kin.   Patterson died on the 8th of February, 1849, pending an application to have his property restored to him, and leaving a will wherein he devised all his real estate, consisting of a farm of about 200 acres of land, to his executors in trust to pay the legacies therein mentioned.   The probate of the will was opposed by

four of the heirs-at-law, in whose behalf the motion was made to vacate the order permitting Patterson to make a will.

J. H. REYNOLDS, for the motion, insisted that the order was irregular and improperly allowed; that the committee and heirs-at-law were entitled to notice and cited 2 Barb. Ch. R. 208.

G. VAN SANTVOORD, in person, for the executors contended that the property of Patterson was vested by the statute in the Court of Chancery and not in the committee; that the application was to the discretion of the court, and the order was obtained merely to remove a *technical* objection; that the heirs-at-law had no interest in the estate in Patterson's life time and were not adverse parties, and therefore not entitled to notice of the order; that an inquisition of lunacy did not *per se* create an incapacity to make a valid will, and that this court should not set aside an order merely to make a party to interpose a technical objection. He cited *Stewart's Exrs.* v. *Lispenard*, 26 Wend. 255; *Stone* v. *Damon*, 12 Mass. R. 488; 2 John. Ch. R. 247; 1 Hill, 97; 2 R. S. 3d ed. 114, 118.

By the Court. PARKER, Justice.—The first question to be determined is whether Patterson could make a valid will, during the existence of the commission, without permission of the court.

In *White* v. *Palmer*, 4 Mass. R. 147, it was intimated by Parsons, chief justice, that a letter of guardianship of a person adjudged to be *non compos* so long as it remained unrevoked was *conclusive* evidence of his insanity; but upon that point, the court declined to give any opinion, and the cause was decided on the ground that the letter of guardianship was *prima facie* evidence that the ward was not of sound mind. In the late case of *Stone* v. *Damon*, 12 Mass. R. 488, the same court held, that if a lunatic under guardianship be restored to his reason, he may make a will although the letters of guardianship be unrepealed. In such case, the burthen of proving a restoration to reason, was cast on the person claiming under the will. The rule seems therefore to be settled in Massachusetts, that the letter of guardianship is only *prima facie* evidence of insanity, as to acts done after the date of the decree appointing the guardian.

But I think a different rule has been established in this state. In *L'Amoureux* v. *Crosby*, 2 Paige, 422, the chancellor held that as to acts done by the lunatic or drunkard, before the issuing of the commission, and which are overreached by the retrospective finding of the jury, the inquisition is only presumptive, and not conclusive evidence of incapacity; but that all gifts of the goods and chattels of the idiot, lunatic or drunkard, and all bonds and other contracts, made by him after the actual finding of the inquisition declaring his incompetency, and until he is permitted

to assume the control of his property by the permission of the court are utterly void. (See, also, Beverly's case, 4 Coke's R. 126; *b.* 127, *a.*)

In the matter of Burr, a lunatic, 2 Barb. Ch. Rep. 208, this doctrine was applied, and the court made an order permitting Burr to make a will, and providing for his protection against the exercise of any undue influence.

I do not think, therefore, that Patterson could, in this case, have made a valid last will and testament, while the commission remained unrevoked, without the order of the court permitting him to do so. The existence of the commission presented a technical objection which it was necessary to remove.

It is objected in this case, that the order of Mr. Justice WATSON, made on the 26th of April, 1848, by which the commission was so far modified as to permit Patterson to make a will, was irregular and void, because it was made *ex parte.* On whom should notice have been served? The committee had no interest in the matter: and the children who now apply to the court were not then the heirs of Patterson. *Nemo est hæres inventis.* I think they had not a right to notice, but that it was entirely a matter of discretion in the justice, whether to require notice to be given; and if given, to say to whom it should be directed; and that the order made would be equally obligatory, whether made with or without notice. In many cases it may be proper to consult the family and friends of the drunkard, as well as the committee. It happens that the justice satisfied himself of the competency of Patterson, by personal examination, and by conversation with him, and satisfactory evidence was produced of his entire abstinence from the use of intoxicating liquors, since the execution of the commission.

The real and personal property of a person found incapable managing his affairs, in consequence of habitual drunkenness, is in the care and custody of the Supreme Court, and not of the committee, who is a mere bailiff acting under the authority and direction of the court, and an application for an order to allow him to make a will, is addressed to the discretion of the court, and we think such an order may, if the court think proper, be made without notice to the committee or the next of kin.

The order appealed from must therefore be affirmed.