# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW-YORK.

———•●•———

## In the matter of CHARLES BURR, a lunatic.

Where a person has been found to be a lunatic, and committees of his person and estate have been appointed, the committee of the person will not be discharged, upon the petition of the lunatic alleging that he is so far restored to reason as to be able to govern himself; where it does not appear that he is yet competent to manage his estate, and no application is made for the discharge of the committee of the estate.

THIS was an application for an order discharging the committee of the person of Burr; and that the allowance heretofore ordered to be paid to the committee of the person and also to the companion of Burr, be paid by the committee of the estate directly to himself, and permitting him to use or invest the same in loans, &c.; and also ordering the committee of the person to deliver to the committee of the estate his mansion house, and all other property belonging to the petitioner, except what he should elect to have delivered to himself, and that the committee of the estate be allowed to sell the personal property that might be so delivered up.

In December, 1844, Burr was found by inquisition filed in the court of chancery to be a person of unsound mind, and Benjamin F. Hoag was appointed committee of his person, on condition that Hoag would reside in the mansion house that belonged to the father of Burr, and take care of him, and Hoag was to have the use of the house and furniture, and $2000 per annum; and he was directed to employ " a moral, discreet, temperate and intelligent companion" for Burr, at a compensation of $600 a year in addition to his board in the family, whose duty was to watch over Burr and keep him entirely from the reach of any one who might lead him into temptation of any kind and to advise with and assist him in his studies; and the committee of his person was to furnish him a carriage in which to ride about with his companion, and he was to endeavor by every suitable means to restore his mental vigor, so that he might be permitted, if possible, to have his property restored to him; and he was to see that the companion faithfully performed his duty, with power to discharge him and employ another as he should deem proper; also to furnish him books and employ servants for him.

Jacob Lane, John Cramer and Henry H. Martin were appointed a committee of his estate, who were to account, &c. &c. and were also to inquire from time to time as to the manner in which the committee of the person discharged his trust—and apply for his discharge if they found he had neglected his duty— and he was to render a general account to them. Mr. Cramer only accepted the appointment.

Burr stated in his petition, which was verified on the 24th of May, 1853, that he was in a very feeble state of mind and body in 1844, and needed some one to watch over and assist him in the care of his person. That he had for some time been gradually recovering his health, and is now in such a condition as to render the supervision of a legal committee of his person unnecessary, and he desired to discontinue his services; and he asked that the committee be discharged, and that the petitioner might attend in open court or before a referee and be examined, &c. Exemplifications of affidavits used on a motion in 1847 were read. Erskine Clark, on the 1st of May, 1847, deposed that he had for

two years been Burr's physician and had known him for many years, and was his near neighbor, and had ample opportunity to judge of his mental and physical condition; that he came to reside in Hoag's family in December, 1844, and was then in feeble health, and so far enfeebled in mind as would be the result of such weakness and infirmity and no farther; and he thought his enfeebled state of mind was attributable to his physical infirmities. That since December, 1844, he had gradually improved in health and there was a corresponding improvement in mental strength; and his " once weakened energies of mind and character are re-established in their wonted vigorous and healthy sway." That he had observed him closely and had never been able " to detect any aberration of reason or want of soundness of mind;" except what proceeded from physical infirmity, and believed him to be a man of good and sound mind, and could with perfect safety be restored to the possession and management of his estate." John R. Peters of the city of New-York, on the 22d of May, 1853, deposed that he had known Burr for forty years and for several years last past intimately, that he had entirely recovered from the effects of his former ill treatment by his father and neglect of his other kindred, and from depression of spirits consequent upon his infirm health. That he was of sound mind and more competent than the generality of mankind to have the custody and direction of his own person, and he thought the supervision of a committee " not only unnecessary but absurd and unjust to a freeborn fellow citizen." Erasmus D. Pitkin of Saratoga Springs deposed that he was one of the proprietors of the American Hotel in that village, and had known Burr intimately for twelve years, during which time Burr had boarded with him a great portion of each year. That he had been gradually improving both in mind and body since he first became acquainted with him, and he thought him in better health than he had ever been since his father's death, and that his bodily and mental health rendered the committee of his person unnecessary, and that he could be safely intrusted with the management of his person and personal affairs. Richard L. Allen, of Saratoga Springs, deposed, May 23, 1853, that he was a prac-

ticing physician, and had been intimately acquainted with Burr twenty years, and had ample opportunity to judge of his physical health and mental abilities, Burr having been at various times under his professional care. That formerly, and as he believed, by neglect of his relatives, Burr became enervated to such a degree·as to render a committee of his person a matter of necessity, but had been, since the appointment of said committee, gradually and steadily recovering his health and mental vigor so as now to be so far recovered as to render such committee unnecessary. That he might with perfect safety be intrusted with the management and control of his own person, and that his health of body and mind was better, he believed, than it had ever been since Burr came under the supervision of the court. N. Bedortha, of Saratoga Springs, deposed, May 23, 1853, that he was a practicing physician, and that for some time past Burr had been under his professional care and had resided in the same house with him. That from their intimate acquaintance and familiar intercourse he had ample opportunity for forming a correct judgment, and had become convinced that he did not need a committee, but could be left with perfect safety to his own discretion, without any supervision whatever.

On the 8th of April, 1853, Burr wrote a letter to Hoag stating that it was highly important, in reference to his recovery, to have a companion towards whom he had friendly feelings, and insisting upon his right to select a companion; stating that his friends, heirs to the estate, considered the committee of the person a sinecure, and useless expense, and that an able and competent companion was amply sufficient for the care of the person. That if he was not allowed to make the selection there would be an application to the court for that purpose, and it would result in abolishing the office of committee of the person, for which he should exert every effort; but if the privilege was granted to him he should not be particular about other things.

*Steward H. Clark*, for the motion.

*E. H. Rosekrans*, contra.

In the matter of Burr.

HAND, J.   By granting this motion Mr. Burr would have a committee of his estate but no committee of his person.   In this respect I think it a novel application.   The appointment of either committee is predicated upon an inquisition finding the party is a lunatic, or idiot, or of unsound mind; which, at least in this state, may, it seems, be neither lunacy nor idiocy, but mental incapacity for the government of himself or his affairs. (*In re Morgan*, 7 *Paige*, 236.   2 *R. S.* 62, § 1.   *In re Wendell*, 1 *John. Ch.* 600.   *In re Barker*, 2 *Id.* 232.   *See Cranmer ex parte*, 12 *Ves.* 445 ; *In re Holmes*, 4 *Russell*, 182 ; *Gibson* v. *Jeyes*, 6 *Ves.* 273 ; *Ridgway* v. *Darwin*, 8 *Id.* 65 ; *In re Mason*, 1 *Barb. S. C. Rep.* 436 ; *Dean's Med. Jur.* 470.)   The " inquiry is," said Ld. Erskine, in *Cramer ex parte*, " whether his capacity is of that kind that fits him for the government of himself and the management of his affairs."   And orders for the appointment of committees usually recite that he " is not sufficient for the government of himself and his estate," or equivalent words.   (*Shelf. on Lun.* 634, 636.   2 *Barb. Ch. Pr.* 662, 664.   3 *Hoff. Ch. Pr.* 392, 394.)   And the reported cases go upon the ground that one incapable from imbecility of mind to manage his estate, is unable to take care of himself.   Incapacity in the former case evinces an " unsound mind," and of those thus afflicted, the chancellor formerly had, and now this court has, the " care and custody."   (2 *R. S.* 52, § 1.   *Jud. Act*, § 16.   5 *Paige*, 120.) The same section of the statute gives the power over the estate and the person.   (2 *R. S.* 52, § 1.)   And the Lords Justices in *Ex parte Loveday*, Ld. Cranworth delivering the opinion, held, under the English statute giving authority over both, that the jurisdiction must stand or fall together.   (8 *Eng. L. and Eq. Rep.* 235.)   A committee of the estate may be appointed here, when a lunatic is a non-resident.   So too, if a resident, a committee of the person may be appointed here, though he has property in another state, and committees of his person and estate have there been appointed.   (*In the matter of Taylor*, 9 *Paige*, 619.   *In re Tottenham*, 2 *My. & Cr.* 39.   *In re Keene, Id.* 42, *n. In re Newport, Id.*)   And during the necessary absence of a committee of the person, a temporary committee has been appointed.

(*In re Ld. Bangor*, 2 *Moll.* 519.   *Shelf. on Lun.* 170.) But if the lunatic is a resident and his estate is in this state, the appointment of a committee of the estate only, it seems to me, would be an imperfect and anomalous proceeding. If these views are correct, the court cannot consistently grant this motion.

Mr. Burr does not state that he has so far recovered as to be able to manage his estate; and in his letter to his committee, dated in April last, he writes that it "is highly important, in reference to my recovery, to have a companion towards whom I feel friendly feelings," &c.; and in another part of it, that his friends consider "an able competent companion to be amply sufficient for the care of his person." And the two physicians, whose depositions, taken in May last, have been read on this motion, give no opinion as to his capacity to manage his estate. That there has been an improvement in his mental and physical powers since 1844, appears quite probable from the affidavits read on this motion; and indeed the chancellor so thought, as early as in 1847. (*In the matter of Burr*, 2 *Barb. Ch.* 208.) But, judging from the petition and the letter of the petitioner, and the qualified language of the affidavits recently made by the two medical gentlemen, I suppose it is not claimed that he now enjoys constant and perfect sanity of mind. It requires strong evidence of that to supersede a commission. (*Shelf.* 204.) No objection is made to the conduct of the committee, in the petition or any of the papers, except in the letter. Nor did I understand the motion to be put upon that ground. However, as that letter has been introduced by the opposing counsel, perhaps it should not be wholly unnoticed. It is quite probable that the selection of a companion is, as intimated in the letter, the origin of this application. By the order of December, 1844, the committee of the estate is to inquire into the conduct of the committee of the person from time to time; but the petitioner also has a right to come directly to this court in relation to the conduct of his committees. The duties of the committee of the person are very delicate and important; being, says Mr. Shelford, "to administer all the comfort and amusement the nature of the case will admit, or the funds of the lunatic afford." (*Shelf.*

142.)  He should be treated with great kindness, and all reasonable means of restoration should be employed; and so far as is necessary for this purpose, the expectations of the next of kin and all others disregarded.  (*Id.* 154.  *In re Salisbury*, 3 *John. Ch. R.* 347.)  The great principle that pervades all orders, in cases of lunacy, is solely and exclusively his interest and comfort.  (*Ld. Loughborough in Oxenden* v. *Ld. Compton*, 2 *Ves. jun.* 72.)  In this case, the sufferer is a gentleman of great fortune, and the means and the compensation are ample; and the committees and those employed by them should have a common object, his protection and recovery, and the care of his estate.  As to the personal control, there should be no capricious domination; but the committee of the person should know and approve his companions.  Were I to judge only from the papers before me, I should be inclined to the opinion that Mr. Burr, in the present condition of his mind, might be allowed to select, subject of course to the disapproval of the committee for cause. But I need not pursue this branch of the case, as the facts in relation to it, probably, have not all been presented to the court, and I do not put the decision upon that ground.

The prayer of the petition must be denied, and ten dollars costs of each party on the motion, must be paid by the committee of the estate out of the funds in his hands.

Ordered accordingly.

[Saratoga Special Term, June 6, 1853.  *Hand*, Justice.]