R. A. SCHOENBERG & COMPANY, Plaintiff, *v.* J. STEVENS ULMAN and THE CITY TRUST, SAFE DEPOSIT & SURETY COMPANY OF PHILADELPHIA, Defendants.

[City Court of New York, Special Term, June, 1906.)

Insane persons — Inquisition — Conclusiveness of adjudication — As evidence in subsequent proceedings.
Reference — Qualification and tenure of referees — Removal — Insanity.
Joint agreements and liabilities — On contracts — In general — Judgment.
Judgment — Opening or vacating on motion — In general: Who are entitled to relief; Grounds.

Where a referee, on the same day he signed his report, was adjudged insane by an order of the Supreme Court based upon an affidavit of his wife and a certificate of two physicians declaring that his lunacy had existed for one month, the adjudication of lunacy is not conclusive as to the competency of the referee to

City Court of New York, June, 1906.          [Vol. 51.

render a proper decision; and, where it appears that on the day he signed his report he was at his law office and transacted his business in a perfectly rational manner, and the physicians' certificates do not allege that he was incompetent to act in regard to his professional duties or matters other than those on which he is said to have entertained delusions, and the opinion in this case was written three weeks before he was adjudged insane and is a clear and intelligent discussion and shows a perfectly clear appreciation of the questions involved, as well as a careful consideration of the testimony taken upon the hearing, and the conclusion at which he arrived seems fair and just; and where his conduct throughout the case, the opinion, his findings which he carefully corrected and the decision which he signed all attest, very strongly, mental capacity to discharge the duty which he performed, and the testimony of several witnesses shows that, immediately before the adjudication, in discharging his professional duties, he conducted himself as a rational person, the presumption of mental incapacity arising from the inquisition is overcome and the judgment should not be set aside on the ground of the referee's mental incapacity.

The fact that the judgment was entered against two defendants, one of whom was a surety company which had been previously dissolved, does not require the judgment to be set aside as to the other defendant; though the receiver of the dissolved corporation might be entitled to such an order as to the judgment against the company he represents.

Motion to set aside a judgment entered upon the decision of a referee.

Philip Tillinghast (Frederic J. Swift, of counsel), for motion, for defendant Ulman.

Leventritt & Brennan (Max D. Steuer, of counsel), opposed, for plaintiff.

Seabury, J.    This is a motion to· set aside a judgment entered upon the decision of a referee.    The action was originally brought to foreclose a mechanic's lien.    The lien was discharged upon a bond being given by the City Trust, Safe Deposit & Surety Company of Philadelphia, which company, as surety on the bond, was joined as a defendant in the action.    George M. Boynton, Esq., was appointed

referee to hear and determine the issue involved in the action. After many hearings the case was submitted to the referee for decision on September 29, 1905. Judgment for the plaintiff was entered upon the report of the referee, whose opinion was dated on November 28, 1905. The proposed findings of the referee were submitted to him on December 7, 1905. In these proposed findings the referee made certain changes, and they were rewritten and signed by him on the 9th day of December, 1905. On December 15, 1905, the referee signed the decision containing findings of fact and conclusions of law, and directed the entry of judgment. On the same day Mr. Justice Stover, of the Supreme Court, signed an order adjudging the referee insane upon the affidavit of the wife of the referee and the certificate of two physicians declaring that such insanity had existed for one month prior to the date of the adjudication of lunacy. To the motion papers is attached a certificate of a prothonotary that the City Trust, Safe Deposit & Surety Company of Philadelphia was, by decree of the Court of Common Pleas for the county of Philadelphia and the commonwealth of Pennsylvania, ordered dissolved and a receiver appointed on June 24, 1905. There is also attached to the motion papers a copy of an order of Mr. Justice Leventritt appointing an ancillary receiver with reference to the dissolution of said company.

This motion to set aside the judgment is made upon two grounds. First, the insanity of the referee, and second, the alleged dissolution of the corporation defendant prior to the entry of the judgment. These grounds will be considered in the order stated.

A referee is an officer required to exercise judicial functions, and there can be no doubt that where a referee is incapable by reason of a mental disease of properly discharging his judicial duties such mental incapacity would be ground for the vacation of a judgment directed by him. Shelford's Law of Lunatics (page 618) declares that " a *non compos* ought not to sit as a judge; it is nevertheless said, that should such a case occur, the fines, judgments and other records taken before him would be good; but it is otherwise of mat-

City Court of New York, June, 1906.          [Vol. 51.

ters *in pais* which might be avoided by a person of non-sane memory." Mr. Buswell, in his work on Insanity (p. 351), says: " Thus it is said that one *non compos mentis* ought not to sit as a judge; but, nevertheless, should such a case occur, that the matters of record taken before him would be good." Mr. Pope, in his Law of Lunacy, says: "A person is practically disqualified for being a judge by insanity. Still it seems that ministerial acts done by a judge who was a lunatic have been held good." The insanity of a juror manifesting itself during a civil or criminal cause is ground for discharging the jury. United States v. Haskell, 4 Wash. C. C. 402. An inquisition of lunacy, found against a witness, is *prima facie* evidence of his incompetency to testify. Hoyt v. Adee, 3 Lans. 173. Where a person lacks mental capacity to properly discharge his duty his actions ought not to be permitted to stand. But actions already performed, and judgments already entered upon the decision of a referee, ought not to be set aside without proof that the referee lacked the mental capacity to properly discharge his duties. The fact that the referee may have entertained delusions upon other matters, if his judgment was unimpaired as to the matters before him, would not of itself make his actions in reference to such matters void. An entirely different question would be presented if the referee had been appointed merely, and had not acted in the premises. In such a case the fact that an inquisition of lunacy had been found against him might be ground for his removal.

Upon a motion of this character the question which must be determined is whether the referee lacked mental capacity to properly discharge his duty. If he did, his decision and the judgment entered upon it should be set aside. If he did not, no reason exists for disturbing the judgment entered upon his decision. The question is one of fact, and its solution must depend upon the circumstances of the particular case, rather than upon the application of artificial legal definitions as to what constitutes insanity. No useful purpose can be served by reviewing the attempts of the early cases to define insanity or by examining the hairsplitting distinctions which these decisions and those based

upon them attempt to make in describing the various kinds of insanity of which the law takes cognizance.  See Hale's Pleas of the Crown, ,31; Beverley's Case, 4 Coke, 123, Ex parte Barnsley, 3 Atk. 168; Donegel's Case, 2 Ves. Sr. 407.

In New York the Statutory Construction Law provides that " the terms lunatic and lunacy include every kind of unsoundness of mind except idiocy " (§ 7).  In regard to determining criminal liability, testamentary capacity or the ability to contract, the rules of law provide varying standards not in harmony with one another.  In his work on Lunacy, Mr. Pope (p. 428) says: " It need only be remembered that the criterion of lunacy varies for different purposes, to show that the establishment of lunacy in one case, and for one purpose, need not necessarily conclude the fact in other cases, and for other purposes."  In determining the question of sanity or insanity, when it is involved as a principal issue, the standard prescribed by law as applicable to the particular class within which the case comes must be applied no matter how artificial it may be or how inconsistent it may be with the opinion of medical experts or with the rules prescribed in other cases.  People v. Silverman, 181 N. Y. 235, 240.  But when the issue of insanity arises collaterally these artificial rules are not necessarily applicable; and in such cases, as Mr. Buswell (p. 24) says, " the question is whether, by reason of mental disease, the party was unable to comprehend the nature of the act, its relations, effects and legal consequences."

Such is the test which must be applied in this case in determining whether the judgment entered upon the decision of the referee should be set aside.  The mere fact that he may have entertained a delusion upon a particular subject, if he was otherwise competent to discharge the duties of his office, would not render his acts in relation to such duties void. Sane men have undoubtedly entertained delusions, and Mr. Wharton has collected interesting instances of what has been called the " insanity of sane men," and cites as examples the names of several famous English and American judges.  See Whart. & Stille Mental Unsoundness & Psychological Law,

§ 140. The question as to whether the referee was mentally capable of rendering a proper judgment must be determined as of the date on which he signed his decision. Until the decision was signed there was no legal determination of the question pending before the referee. The signing of the decision required the exercise of the judicial judgment. Up to that time the referee might change or reconsider the determination at which he may previously have arrived. The necessities of the case require that some definite time shall be fixed at which a judicial officer shall surrender control over a case submitted to him for decision. The signing of the decision and giving notice of that fact to the party entitled to it has been fixed as the time when judicial authority over a case is surrendered. "If anything short of these is to have that effect," said the court in Ayrault v. Sackett, 17 How. Pr. 509, " there is no way of drawing a boundary line for the exercise of his discretion or judicial power." The same view is upheld in Weyman v. Nat. Broadway Bank, 59 How. Pr. 331, and in Putnam v. Crombie, 34 Barb. 232, 237. The capacity of the referee to make his decision must be determined as of the date on which the decision was signed and notice of that fact given to the party entitled to it. In this case that date was December 15, 1905, which was the same day as that upon which the referee was adjudged insane by the order of Mr. Justice Stover. In considering whether the referee was mentally capable of determining the questions submitted to him for decision, it is necessary to ascertain the legal effect of the adjudication of lunacy. The learned counsel for the defendant contends that such an adjudication is conclusive of the fact of the lunacy of the referee upon this motion. The question of the effect of the adjudication of lunacy as evidence is discussed with great clearness by Mr. Pope in his Law of Lunacy (pp. 428, 429). He says: "How far are inquisitions of lunacy evidence against third persons or against the crown? The reply may be stated thus: (a) Inquisitions of lunacy may be given in evidence of insanity, both in civil and in criminal proceedings. (b) The finding of insanity on an inquisition creates a presumption in favor of insanity, and throws the *onus* of

proof on those who contend the contrary. (c) But neither is a finding of insanity conclusive of insanity, nor a finding of the absence of insanity conclusive of sanity. * * * Thus it appears that, although inquisitions stand upon a somewhat better footing than other *res inter alios acta,* yet being in their nature *ex parte* proceedings, they are not absolutely conclusive on other parties. It is competent for such parties to dispute the fact, and to maintain that notwithstanding the inquisition the subject of it was of sound mind at any period of time over which the inquisition extended. In substance the same rule is enunciated by Buswell on Insanity (p. 216, § 194), where it is said that "where the sanity of a party at the time of doing a particular act is questioned in a collateral proceeding, a former determination of the question as a principal issue by a competent tribunal may always be given in evidence. And such former adjudication of insanity will stand thenceforward, until reversed, as proof of the fact, and the burden of proof will shift to the party alleging the agent's sanity at the time of the act. So, if the finding of the former tribunal established the sanity of the party it seems that such finding, while not conclusive of sanity, is competent evidence to prove it." In Wharton & Stille on Medical Jurisprudence (Vol. 1, p. 37, § 38) the rule is stated as follows: "As to strangers, an inquisition of lunacy is only *prima facie* proof of business incompetency, though it binds the parties. That it is admissible as *prima facie* proof as to third parties is generally held, though on principle its admission is open to the serious objection of being *res inter alios acta.* And it is never conclusive as to strangers; as to them an inquisition is only presumptive or *prima facie* evidence of mental incapacity, and it may always be traversed or rebutted by a person not a party to the proceeding; but it destroys the presumption of sanity and casts the burden of showing it upon the party alleging it." (See cases cited.)

In New York the rule has been established that after inquisition found any contract made by a lunatic is absolutely void, and the inquisition is conclusive so long as the adjudication of incapacity remains in force. L'Amoreux v.

Crosby, 2 Paige, 422; Fitzhugh v. Wilcox, 12 Barb. 235; Wadsworth v. Sherman, 11 id. 169; Matter of Patterson, 4 How. Pr. 34; Wadsworth v. Sharpsteen, 8 N. Y. 388; Wallace v. Frey, 27 Misc. Rep. 29; Sanders v. Savage, 75 App. Div. 335; Carter v. Beckwith, 128 N. Y. 312; Hughes v. Jones, 116 id. 67. But the rule is equally well settled in New York that the doctrine that an inquisition is conclusive is applicable to contracts and gifts only. No such rules applies in reference to wills or to the liability of one for his criminal acts, or where the question of insanity arises as a collateral issue between strangers. Lewis v. Jones, 50 Barb. 645; Southern Tier Masonic Relief Assn. v. Laudenbach, 5 N. Y. Supp. 901; Matter of Taylor's Will, 1 Edm. Sel. Cas. 375; Matter of Coe, 47 App. Div. 177; Matter of Widmayer, 74 id. 336; Wadsworth v. Sharpsteen, 8 N. Y. 388, 393; Hoyt v. Adee, 3 Lans. 173. These authorities seem to me to leave no doubt as to the legal character and effect of the inquisition as evidence upon this motion. It is *prima facie* evidence of the insanity of the referee upon the day that he signed his decision. The method of procedure by which a person under our statutes can be adjudged insane is not such as to necesarily secure a satisfactory or correct result in all cases or to safeguard the rights of the individual. See People ex rel. Sullivan v. Wendel, 33 Misc. Rep. 496; Matter of Egan, 36 App. Div. 47. Upon the affidavit of his wife and the certificate of two physicians containing allegations of a very vague and general character, Mr. Boynton was not only adjudged a lunatic, but personal service was dispensed with on the ground "that it would be unadvisable and dangerous to make personal service" upon him. Yet on the day when the adjudication was made and service of notice of the proceedings was dispensed with, Mr. Boynton was at his law office and transacted his legal business in a perfectly rational manner. Under these circumstances any presumption of the mental incapacity of the referee that may arise from the inquisition cannot be very strong or convincing. That Mr. Boynton was in ill health, that he was laboring under a mental strain, and that his condition might be greatly im-

proved by his retirement to a sanitarium is shown by the papers submitted, and is not disputed upon this motion. Indeed, the certificates of the two physicians upon which the inquisition was found do not allege that in relation to his professional duties or in regard to matters other than those upon whch he is said to have entertained delusions, he was incompetent to act.

In determining whether Mr. Boynton was unable to comprehend the nature of his act, its relations, effects and legal consequences, the decision itself and the character of his acts should be given great weight. Mr. Pope says that " in civil matters it may be taken that the rationality of the act itself and of the manner of doing it, though not conclusive as to the sanity of the doer, is very strong evidence of it, even where he has generally been regarded as insane, and may be under confinement on that account at the time." Law of Lunacy, 413.

The uncontradicted proof upon this motion shows that prior to and on December 15, 1905, Mr. Boynton attended to his professional duties properly and well. The opinion in this case was written by him three weeks before he was adjudged insane, and is a clear and intelligent discussion of the legal questions involved. It shows a careful consideration of the testimony taken upon the hearing, a perfectly clear appreciation of the questions involved, and the conclusion at which he arrived seems to have been fair and just. If, therefore, the rationality of the act is to be regarded as " very strong evidence " of sanity, then the conduct of Mr. Boynton throughout this case, the opinion which he wrote, the findings which he carefully corrected, and the decision which he signed all attest, very strongly, mental capacity to discharge the duty which he performed. In addition to the rational character of the act itself, the evidence of several members of the bar and business men, with whom he conducted professional matters on the day or immediately prior to the day when he was adjudged a lunatic, is presented to show that in his relations with them and in regard to the discharge of his professional duties, Mr. Boynton conducted himself as a rational person. The counsel for

the defendant contends that this evidence should not be considered, because it comes from those who are not experts. So far as these witnesses have testified to facts which they observed and conversations with Mr. Boynton, their testimony is certainly competent and important. And even where they have given their opinions as to whether his actions were rational or irrational, such testimony is not to be disregarded. In Paine v. Aldrich, 133 N. Y. 544, 547, the court said, in reference to the testimony of a layman, " he could state the acts and conversations of which he had personal knowledge and then be permitted to say, whether, in his judgment, such acts and conversations were those of a rational or irrational person."

Giving full force and effect to the legal presumption arising from the inquisition it must, nevertheless, be conceded that its force is very much weakened by the character of the evidence upon which it was found, and the circumstances under which notice of the proceedings to Mr. Boynton was dispensed with. Bearing in mind in this connection the rationality of Mr. Boynton's acts in relation to this case, and the testimony of his associates and others with whom he came in contact, I think that any presumption of mental incapacity arising from the inquisition is entirely overcome in relation to this case, where the question of lunacy is collaterally involved. The question to be determined is one of fact, and must be solved with due regard to all the attendant circumstances, rather than by according any undue weight to presumptions arising merely from the inquisition. The defendants in this case secured the appointment of the referee, many hearings were had, what seems to be in all respects a fair and impartial decision was made, and under the circumstances the judgment entered upon it should not be set aside merely because of the inquisition found against the referee.

The defendants seek to set aside the judgment upon the ground that one of the defendants, the City Trust, Safe Deposit & Surety Company of Philadelphia, was dissolved on the 24th day of June, 1905, pending the hearing of the case before the referee and prior to the entry of the judg-

ment and an ancillary receiver appointed in this State. The contention of the defendant Ulman, as respects this ground of the motion, is that as the judgment is a joint judgment against both defendants, it is void and must be set aside. Assuming that the certificate of a prothonotary and the certified copy of the order of Mr. Justice Leventritt properly presents the contention of the defendant, and that the judgment was a joint judgment, I do not think that the defendant Ulman can take advantage of any irregularity in the entry of the judgment against his codefendant. Such an irregularity in no way affected the defendant Ulman. He certainly was not prejudiced by it. He could not appeal from the judgment on the ground of such irregularity (Isham v. New York Assn. for Poor, 177 N. Y. 219; Matter of Nepperhan Street, 71 App. Div. 534); and in reason he ought not to be permitted to have the judgment set aside on motion on this account. A different question would be presented if this motion was made by the receiver or legal representative of the surety company. The attack made upon the judgment cannot be sustained on this ground.

Motion denied. No costs.