IN THE MATTER OF THE APPLICATION OF JANE LE BRETON BRUGH, AN ALLEGED LUNATIC.

*Insane persons — tests of recovery to competency to manage property — Code of Civil Procedure, secs. 2320, 2343.*

The following tests of recovery from a state of insanity are approved:

*First.* A natural and healthy state of the emotions.

*Second.* Absence of insane ideas and delusions.

*Third.* The possession of sufficient powers of attentive memory and judgment to enable the individual to take his part as a member of society.

*Fourth* Practical and reasonable conduct.

The conditions which render one incompetent to manage his affairs, under section 2320 of the Code of Civil Procedure, do not embrace mere weakness of mind, nor lack of business capacity or experience.

The provisions of section 2343, relating to the discharge of the committee of the property of a lunatic, when the latter becomes "competent to manage * * * his affairs," do not require a competency proportioned to the extent of the estate of the lunatic, but only mental health and a fitness to manage the common and ordinary affairs of life.

APPEAL by Mary Le Breton Mitchell, the committee of the above-named Jane Le Breton Brugh, from an order, entered in the office of the clerk of Erie county on the 22d day of September, 1890, confirming the report of a referee, which found, among other things, that the said Jane Le Breton Brugh had become competent to manage herself and her affairs, and which order directed the discharge of the said committee upon her accounting to the said Jane Le Breton Brugh, and restoring to the latter all moneys and property in the hands of said committee.

*George F. Danforth* and *William G. Cooke,* for the committee, appellant.

*Nelson Morey,* for the petitioner, respondent.

DWIGHT, P. J.:

A very careful reading of the voluminous proofs taken and returned by the referee in this proceeding has satisfied us that his conclusion of fact, to the effect that the petitioner has recovered from the insanity with which she was afflicted at the time of the issuance of the commission, is abundantly established, and that — in

the language of his opinion — "her incompetency resulting from lunacy has ceased, and that she is now competent by reason of her restoration to a healthy mental condition to manage herself and her affairs." We do not deem it necessary to restate the grounds of this conclusion. They are clearly and fully stated in the opinion of the referee, and to that opinion we refer with entire approval for a history of the case and for a review and classification of the evidence upon which his conclusions are founded. We are especially satisfied with his final application to the whole case of the four tests of recovery from a state of insanity which are prescribed by one of the highest medical authorities on this subject, namely, Dr. John Charles Bucknill of London, lately the lord chancellor's visitor of lunatics. The tests as quoted by the referee are the following :

1. A natural and healthy state of the emotions.

2. Absence of insane ideas and delusions.

3. The possession of sufficient powers of attentive memory and judgment to enable the individual to take his part as a member of society.

4. Practical and reasonable conduct.

These tests, it seems to us, must commend themselves to every thoughtful mind, whether scientific or unscientific, as admirably comprehensive, discriminating and conclusive; and to each and all of them the case of Mrs. Brugh, as disclosed to us by the evidence as a whole and in its parts, responds with complete success. It will be observed that these tests of restoration from a diseased to a healthy mental condition do not include the manifestation of strength of mind, of high reasoning powers, of unerring judgment; nor do they set up any standard of business capacity or of ability in the conduct of affairs. These last mentioned qualifications necessarily include the elements of education and experience which, manifestly, have no place among the symptoms of mental health or disease.

If the qualities of mind enumerated were among the necessary *indicia* of soundness of mind, it must be conceded that the case of the petitioner would not endure the test. Mrs. Brugh is undoubtedly, except in her faculty of memory — which in respect to things both recent and remote is phenomenal — a woman of somewhat feeble mind. She has probably been so from childhood, but she was very far removed from a condition of idiocy; she was never an

imbecile, and her insanity was of a special type, and its attacks the result of special physical conditions — namely, of pregnancy and childbirth — which in her case ceased to occur more than thirty years ago. But, as the evidence tends to show, she is not and probably was never a woman of strong mind, and she has had no business education and but little experience of business. When a school girl of eighteen she was permitted to become the wife of a youth of twenty-one, who was just completing his medical studies, and who developed into an incapable, improvident, unsettled man, who wasted her little fortune and acquired none of his own. They lived here and there, and from hand to mouth, for a period of thirteen or fourteen years, when, at about the time of the birth of her third child, she was visited by a second attack of insanity, and being thrown upon the care of her relatives was committed by them to the insane asylum, at Blackwell's Island, as a pauper lunatic. There she remained for another period of thirteen years. In the meantime, and about three years before she was discharged from the asylum, she became, by reason of the falling in of a precedent estate, entitled to an undivided share of a valuable real property in the city of New York. It was then that her relatives, who seem at all times to have manifested more interest in her property than in her personal rights or even in her comfort and happiness, instituted proceedings against her as a lunatic, and procured an adjudication of her insanity, and the issuance of the commission granting custody of her person and estate, which it is the object of this proceeding wholly to supersede. It was in a manner superseded in 1882, in respect only to the custody of her person, when in a proceeding like the present instituted by herself, her contention was compromised by the counsel who then represented her, and a stipulation was entered into with the committee, which recited " that the petitioner is sufficiently recovered to be competent to exercise her choice as to her place of residence and with whom she shall reside, and is not now in need of any personal supervision as to her conduct, but is not of sufficient competency to manage her estate or decide as to the expenditure of her income ; " and the stipulation, which became the basis of an order to the same effect, provided that the petitioner should thereafter be allowed to select her place of residence and the person with whom she should reside ; that the

committee should pay a reasonable sum for her support and maintenance, and that she should "be allowed the sum of one dollar per week for her personal expenses." Since that time she has lived with friends, not of her family, with whom she had found for herself a home before the privilege was accorded to her by the court; by whom she has been treated with kindness and respect; where she·has mingled freely with her neighbors in social and religious gatherings, and where she has constantly maintained the character of a lady of gentle manners, of warm affections, of quiet and sensible deportment and of correct views of life.

The life thus briefly depicted gave small opportunity for acquiring experience in business or cultivating ability in the management of affairs. Indeed, were Mrs. Brugh shown to have possessed the full average measure of native strength and acuteness of mind, she could not be expected to leap at once from the condition of dependence and restraint in which her whole life had been passed, into a condition of competency to manage, without assistance or advice, an estate of the estimated value of forty or fifty thousand dollars, requiring the choice of investments and a knowledge of the value of securities. When, therefore, counsel for the committee, on cross-examination of the experts who had testified that Mrs. Brugh was restored to soundness of mind, propounded to them questions based in part upon the foregoing history, as follows : "Do you think it would be safe for that woman now to take charge of forty or fifty thousand dollars worth of property, without any assistance or control or direction?" and "Is she of the same business capacity and responsibility, intellectually, as an ordinary woman who has had business experience, and has never been confined in a lunatic asylum?" and "Do you think she has manifested business capacity enough since she has lived in Hamburgh (her present residence), to make it safe to turn right over to her forty or fifty thousand dollars worth of property to do what she likes with?" They were asking questions which answered themselves, but were not very pertinent to the inquiry in hand. These questions·proposed a test of the right of one to the possession and control of his own property, which has no warrant, either at common law or in our statute relating to the care or custody of the property of idiots, lunatics or habitual drunkards. The statute — which is declaratory of the rule

of the common law — in terms confines the jurisdiction of the court, in this respect, to the case of a person incompetent to manage his affairs by reason of lunacy, idiocy or habitual drunkenness (Code of Civ. Pro., § 2320); and it defines the term lunacy to embrace every description of unsoundness of mind except idiocy (Id., § 3343, sub. 15); but it does not embrace mere weakness of mind nor lack of business capacity, still less want of business experience. Unsoundness of mind is etymologically synonymous with insanity, and insanity is " a chronic disease of the brain inducing chronic, disordered mental symptoms." (Ency. Brit., tit., Insanity.)

So, too, the statute provides for the discharge of the committee of the property of a lunatic whenever the person subjected to the commission becomes " competent to manage  *  *  *  his affairs." (Id., § 2343.) But this language does not intend competency to manage a great estate if the person happens to possess one. This would make the right of such person to be restored to the management of his affairs to depend upon the amount of his property, requiring as a condition of such restoration a degree of competency in each case proportioned to the extent and value of his estate, and, in the case of some colossal fortunes, raising the requirement to a standard of business capacity and genius for affairs to which few men and fewer women have ever attained  There is no authority for such a construction of the statute, and a statement of the proposition in its logical result reduces it to an absurdity. The test of a man's right to be restored to the possession and control of his property is not his competency to manage his particular estate, be it great or small, but his restoration to mental health and his consequent fitness for the management of the common and ordinary affairs of life. " Competence to common purposes" was the terse and comprehensive phrase employed by Lord Eldon to describe the degree of competency sufficient to warrant superseding a commission. (Ex parte Holyland, 11 Vesey, 10.) And in that case the lord chancellor said it was not necessary that the mind should be restored even to its original state, and he cited competency to make a will of personal estate as an illustration of that " competence to common purposes," which was sufficient. In the case of In re Cranmer (12 Vesey, 445), the Lord Chancellor (Erskine) refused to confirm an inquisition because the finding was not " of unsound mind,"

or "*non compos mentis*," or in other equivalent words, but only that the party was so far debilitated in his mind as not to be equal to the general management of his affairs. In that case Lord ERSKINE adopted the phrase of Lord ELDON as descriptive of the competency which was sufficient to save a man's estate from a commission; and he made his application of it very plain by supposing the case of a farmer whose mind was so far debilitated that he could not manage his farm, and yet was "competent to common purposes," in which case a commission would not issue. The case, in our own State, of *In re Barker* (2 Johns. Ch., 232), may be regarded as extending the jurisdiction of the court, under the common law rule, beyond the classes of technical idiots and lunatics, to cases of imbecility arising from old age, properly denominated *senile dementia*, or of *loss* of memory and understanding by sickness, grief or other accident; but it proposes no classification which would include the case of the petitioner here, who has concededly recovered from a visitation of insanity and has been restored to soundness of mind, though not now, and probably never, possessed of that strength of mind and capacity for business which would fit her for the unaided management of a considerable estate.

But why should the hypothesis be indulged that Mrs. Brugh will be compelled or will attempt to manage her estate without advice or assistance? Very few women, even of the highest intelligence, are accustomed to do so. Mrs. Brugh herself is properly conscious of her need of such assistance, and she is as much entitled to it, so far as we know, as any other woman. When the occasion arises she will be at liberty to choose her own advisers and assistants, and if by reason of weakness and inexperience she should fall into the hands of evil and designing men, equity will interfere, by a process other than a commission of lunacy, to relieve against fraud and undue influence. Her views and wishes in this respect are disclosed by her statements to the witness Dr. Clark when he examined her with a view to testifying as an expert in this proceeding. The referee very properly calls special attention to the testimony of that witness. It is very intelligent and pertinent testimony. It embodies the answers of Mrs. Brugh to many questions put by him with a view, among other things, to elicit her ideas of the responsibility attached to the possession of property, and the manner in which she would

care for and employ her own if the responsibility were laid upon her; all of which answers were pertinent, intelligent and reasonable. Without taking the time to quote from the testimony of Dr. Clark, we must be content to say that it is very convincing of the restoration of Mrs. Brugh to soundness of mind, and to a degree of competency fully up to the standard set by the authorities to which reference has been made; and we find no testimony in the case which substantially detracts from the effect thus produced.

We think the conclusions of the referee in this case are well supported, and agree with him that a case is made for superseding the commission herein in respect to the property as well as to the person of the petitioner.

The order of the Special Term should be in all respects affirmed.

MACOMBER and LEWIS, JJ., concurred.

Order appealed from affirmed, with costs of this appeal to the respondent to be paid by the appellant personally.