(31 Misc. Rep. 339.)

In re CLARK.

(Ontario County Court. April 16, 1900.)

1. INQUISITION IN LUNACY—DELIBERATIONS OF JURY—OFFICER PRESENT—HARM-
   LESS IRREGULARITY.
   An officer in charge of a jury deliberating on a lunacy inquisition in one
   corner of a large room stepped into the room, on account of the inclemency
   of the weather, and stood near the entrance door, but took no part in the
   deliberations, and overheard very little of what the jury was discussing.
   *Held*, that, though the presence of officers in a jury room during the delib-
   erations of a jury should not be permitted, the irregularity did not preju-
   dice the rights of the parties, and the confirmation of the inquisition would
   not be refused on that ground.

2. SAME—MISCONDUCT OF JURY—HEARSAY AFFIDAVIT.
   An objection to the confirmation of an inquisition in lunacy for miscon-
   duct of the jury, shown only by a hearsay affidavit (the person who
   claimed to have overheard the conversation having refused to make an
   affidavit), is too indefinite and uncertain to constitute ground for reversal.

3. SAME—PETITION—NOTICE TO INCOMPETENT—SUBSEQUENT OBJECTIONS.
   Though the Code does not require, nor is it necessary, in a lunacy inqui-
   sition, that notice be given to the alleged incompetent of the presentation
   of the petition and affidavit, yet, if such notice is not given, it will entitle
   him to raise any question that he may be advised as to the sufficiency of
   the petition and corroborating affidavit on the first opportunity he may
   have to present the same.            •

4. SAME—COMMISSIONERS—JURISDICTION—MOTION TO SET ASIDE INQUISITION.
   A commissioner in lunacy has no jurisdiction to entertain a motion to
   dismiss a petition and set aside an inquisition in lunacy. Such a motion
   should be addressed to the court.

5. SAME—PETITION AND AFFIDAVITS—SUFFICIENCY—STATUTES CONSTRUED.
   Code, § 2320, provides that the jurisdiction of the supreme court extends
   to the custody of persons incompetent to manage their affairs by reason
   of lunacy, idiocy, habitual drunkenness, or imbecility. An affidavit char-
   ged that during many years last past the incompetent "has been of weak
   mind," and that for some time a certain woman, of low extraction, coarse,
   and ignorant, has exercised control over him in his affairs, and that he
   was "incompetent to manage himself or his affairs, and is of weak mind."
   *Held*, that such affidavit was insufficient, in that it did not charge that
   such person was incompetent in consequence of one of the disabilities spec-
   ified in the statute.

6. SAME—FINDINGS OF JURY—SUFFICIENCY—STATUTES CONSTRUED.
   Under Code, § 2320, providing for the control of persons incompetent
   to manage their affairs "in consequence of lunacy, idiocy, habitual drunk-
   enness, or imbecility," the return of an inquisition by a jury which states
   that one "is an incompetent person and is unfit to manage his own affairs;
   that such infirmity manifests itself in weakness of mind,"—is insufficient
   to show incompetency on any of the grounds contemplated by the statute.

Motion to confirm lunacy inquisition upon Eugene P. Clark, an al-
leged incompetent, and to appoint a committee. Denied.

Hopkins & Converse, for petitioner.
W. C. Ellis (Edwin Hicks and E. A. Griffith, of counsel), for re-
spondent.

KNAPP, J.  The petition of Howland P. Wells, a brother-in-law of the alleged incompetent, accompanied by an affidavit of Collins Payne and Mary E. Payne, was presented to this court July 24, 1899, and an order granted thereon appointing a commissioner, as provided by section 2327 of the Code.  The usual proceedings under sections 2330 and 2331 of the Code have been had, and the inquisition is now returned, which is duly signed by the commissioner and jurors, finding that said Eugene P. Clark is an incompetent person, and this motion is made for its confirmation and for the appointment of a committee.  Mr. Clark, the alleged incompetent, by his counsel, objects to the confirmation, and moves that the petition be dismissed, or that the inquisition be set aside, and a new trial or hearing be granted. Improper conduct on the part of the jury, or some member of it, in conversing with a witness, and a claim that the officer in charge of the jury was in the jury room during their deliberations, are made one of the grounds of objection to confirmation.  It appears that the officer, during a part of the time while the jury were deliberating, was inside of the room occupied by the jury, but stood near the entrance door, and took no part in the deliberation, and heard but little, if anything, of what the jury was discussing.  The room is a very large one, called a "hall," being 50 feet or more in length, and the jury were congregated in one corner, near the stove; and the officer merely stepped inside the door on account of the inclemency of the weather. While the presence of officers in a jury room during the deliberations of a jury should not be permitted, still the circumstances of this case are such that the irregularity complained of could in no way have affected the result or prejudiced the rights of any parties, and confirmation of the inquisition would not be refused on that ground. As to the alleged improper conduct of the jury, this is brought to the notice of the court by merely a hearsay affidavit, the person who claimed to have overheard the conversation having refused to make an affidavit in reference thereto.  The charge is too indefinite and uncertain to constitute any ground for reversal.

More serious questions, however, present themselves upon this motion.  Before any evidence was taken in the proceedings before the commissioner and jury, the respondent appeared specially by counsel, and moved to dismiss the proceedings upon the ground that the affidavit and petition read on motion for the order directing the commission to issue are insufficient in law and in fact to warrant the granting of such order.  The motion was denied, and an exception taken, and the motion is now renewed before the court.  No notice of the presentation of the petition to the court was served upon the alleged incompetent person.  While such notice is not required by the Code and is unnecessary (In re Beach, 23 App. Div. 413, 48 N. Y. Supp. 437), still the fact that the alleged incompetent person did not have notice will, it seems to me, entitle him to raise any question that he may be advised as to the sufficiency of the petition and corroborating affidavit, upon the first opportunity he may have to present the same.  I think that the commissioner was right in refusing to entertain the motion; that being a matter which must be addressed to the court, and over which the commissioner has no jurisdiction.  An order to show cause, with a stay, might have been asked of the court,

or a motion might have been made to the court before the execution of the commission for a dismissal of the petition upon the ground of insufficiency, but such order was not sought nor was such motion made until after the hearing and the return of the inquisition. I see no just grounds for refusing to entertain the motion at this time. Counsel for petitioner cites the case of In re Zimmer, 15 Hun, 214, in support of his contention that the sufficiency of the allegations of the petition cannot be questioned at this time. The syllabus in this case is misleading. The committee of Zimmer had been appointed in 1867, and a motion was made to supersede the committee, and was not made until nearly 10 years after. All that the court decided, so far as the question here raised is concerned, is found at page 216 of the opinion::

"The averments in the petition and affidavits respecting the mental condition of Zimmer were not sufficient to authorize the appointment of a committee, and, if the inquisition had found nothing more, it would have been quashed on motion. But the inquisition found that Zimmer was of unsound mind, and incapable of the government of himself or the management of his estate. That finding brought the case within the statute, and authorized the court to appoint a committee. The appointment thus made upon a sufficient finding of the jury cannot be set aside at this late day, and in this proceeding, by reason of the alleged insufficiency or irregularity of the petition and affidavits."

This case comes very far short of deciding that a respondent cannot, upon the first opportunity to be heard by the court, move to dismiss the petition upon the ground of its insufficiency.

In re Beach, 23 App. Div. 411, 48 N. Y. Supp. 437, notice of the presentation of the petition was given to the alleged incompetent, and affidavits were read upon both sides; and, although the petition and corroborating affidavits were sufficient to show that the case was one of those specified in section 2320 of the Code, still, because of contradictory affidavits, the court refused to order a commission to issue, and it held, in substance, that the petition should not have been dismissed, but the question of Mrs. Beach's competency should be investigated before the proper tribunal. I find nothing in the opinion of the case of Jackson v. Jackson, 37 Hun, 306, holding a different proposition. If, then, the sufficiency of the petition and corroborating affidavit of Collins and Mary E. Payne must be considered this time, our next inquiry must be directed to the petition and this affidavit, to determine whether or not there is enough stated therein, from which it can be said that it presumptively appears that the case is one of those specified in section 2320 of the Code; and this requires a careful examination of the provisions of the Code relating to these proceedings, and of the precedents established by the courts in construing them. By section 2320 it is provided that the "jurisdiction of the supreme court extends to the custody of the person and the care of the property of a person incompetent to manage himself or his affairs, in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory or understanding or other cause." It is unnecessary to state that the county court has precisely the same jurisdiction, and whatever controls the action of the supreme court in these matters to the same extent controls the county court. By the same section it is also provided that a person

against whom a proceeding is brought shall be designated "an alleged incompetent person," and, "after the appointment of a committee of such person, in all subsequent proceedings the lunatic, idiot, habitual drunkard, or imbecile shall be designated as an 'incompetent person.'" It will be thus seen that there are four classes of persons, and but four, over which the court can exercise jurisdiction by means of a committee. These four classes are (1) lunatics, (2) idiots, (3) habitual drunkards, and (4) imbeciles. The imbecility may arise from old age or loss of memory and understanding, or from other cause. As the Code stood prior to 1894, the fourth class of persons was omitted, and lunacy was defined to include all forms of mental unsoundness except idiocy. While the language of the Code has been extended by the addition of the phrase, "imbecility arising from old age or loss of memory and understanding, or other cause," still, with the definition given to the word "lunacy," the meaning of the section has not been much changed. The provisions in regard to the designation of the person proceeded against as "an alleged incompetent person" and "an incompetent person" merely had reference to the title of the proceeding, or to the characterization of him in any other place or connection in which the lunatic, idiot, habitual drunkard, or imbecile may be mentioned. It does not do away with the necessity of bringing the person "alleged to be incompetent" within one of the classes mentioned. He must be a person "incompetent to manage himself or his affairs, in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory and understanding, or other cause"; and, if he is not brought within this class or description, then the jurisdiction of the court—whether the supreme court or the county court—does not extend "to the custody of his person and the care of his property." It may not be necessary that the words of the statute should be used in the petition or in the inquisition, but such language must be used as will clearly bring the case within the statute. In Re Mason, 1 Barb. 436, which was decided before our Code, it is held, in substance, that "the form of the return to the inquisition is only important so far as it is necessary to satisfy the conscience of the court." But, the opinion goes on to state, "if, upon the coming in of the inquisition, enough appears to enable the court to adjudge the party to be within some one of the classes of persons over whom the statute," as it then was, confided to the court of chancery the care and custody of the persons and estates of lunatics, idiots, persons of unsound mind, and habitual drunkards, in that case the jury found the party to be mentally incapable of governing himself or managing his affairs. The rule is just as applicable to the petition as to the inquisition. By section 2327 it is provided:

"If it presumptively appears to the satisfaction of the court, from the petition and proofs accompanying it, that the case is one of those specified in this title; and that a committee ought, in the exercise of sound discretion, to be appointed. the court must make an order directing, either (1) that a commission issue," etc.

Section 2325 provides that the petition "must be accompanied with proof, by affidavit, that the case is one of those specified in

this title." In Re Beach, 23 App. Div., at page 413, 48 N. Y. Supp. 439, Judge Ingraham says:

"To justify any order, however, it must presumably. appear, to the satisfaction of the court, from the petition and the proof accompanying it, that the person against whom the proceeding is instituted is a person incompetent to manage himself or his affairs in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age, or loss of memory and understanding, or other causes. When such a state appears by such petition and the accompanying proof, a case is made out where the court should order the inquiry to be made in one of the methods required by the section of the Code before referred to."

I have carefully examined every case cited by counsel, and find no different doctrine held by any authority. With the rule before us, then, that the petition must be accompanied by an affidavit showing that the case is one of those specified by the statute, that the petition itself must set forth facts sufficient to show the same thing, and that, if the petition and affidavit do not show a case covered by the statute, then the granting of the order which directed the commission to issue is unwarranted, let us examine the petition and affidavit, and see if they conform to the rule.

The affidavit states, in substance, that Clark is about 49 years of age, and has for many years resided on a farm in the town of Manchester with his mother; that during many years last past he has been of weak mind, and during the life of his mother all or nearly all of his business matters were transacted by her, as was also the carrying on of the farm; that the loaning of money or purchasing of property, or selling same, was done by his mother, or under her direction; that his mother died July 27, 1898, and her property was thereafter divided among her heirs; that after the death of his mother Mrs. Philip Powers "acquired great ascendency over him," and at the present time, and for some time past, has transacted his business for him; that one of the affiants, Mary E. Payne, a sister of Clark, is the administratrix of the estate of Clark's mother, and during a part of the year following her death Clark consulted with his relatives, and asked their advice and help in his affairs; that Powers and wife have continued to reside on the portion of the farm set off to Clark in the division made between the heirs, and have acquired complete control over him, and alienated his affections from his relatives, and otherwise dominate and control him; that Mrs. Powers has stated that, if one managed Clark right, he would do anything for them, and that it is currently reported in the neighborhood that Mrs. Powers has made her brag that she was going to have Clark marry her daughter, a girl about 15 years of age; that Powers and wife are people of low extraction, coarse, and ignorant, and have so worked upon the mind of Clark that he will not have anything to do with his relatives, and is becoming apparently completely under them. By this affidavit it is not even alleged that Clark is incompetent to manage himself or his affairs, and there is absolutely nothing in the affidavit which would indicate mental incompetency, unless it be the expression that Clark has been of weak mind. It has been held by the courts in this state, in many adjudicated cases, that mere weakness of mind, not amounting to imbecility, is not sufficient. In re Rush (Sup.) 53 N. Y. Supp. 581; In re Brugh, 61 Hun, 193, 16 N. Y. Supp. 551. The last case,

though decided in 1891, before the amendment to section 2320 of the Code, which added "imbecility" to the class of persons over whom the court could exercise jurisdiction by a committee, is nevertheless, I think, an authority, because of the definition given to lunacy under the Code before the amendment, which made it include all forms of mental unsoundness except idiocy. Furthermore, the statute itself does not state that "weakness of mind" is one of the cases within the jurisdiction of the court. It is true that weakness of mind may be of different degrees, and may be so great as to bring the person within the description of an imbecile, but there is nothing in this affidavit to show that Clark's mind was so weak that he would come within that description. It cannot be said that the fact that his mother transacted all or nearly all of his business matters, and directed the loaning of the money or the carrying on of the farm, etc., would indicate that the mind of Clark was so far impaired that he could not, if called upon, perform these ordinary business affairs. Neither does the fact that he appears to have become attached to the Powers family, and that they transact business for him, go to show, in the slightest degree, that he is mentally incapable of governing himself or his affairs. It appears that for nearly a year after his mother's death he counseled with his relatives, and asked their advice and help in his affairs. Surely this would indicate reason and common sense, instead of lack of it; and it is not claimed that his mind was any weaker while asking advice and help of his relatives than it was after he sought advice elsewhere. The allegations that Mrs. Powers has stated that, if one managed Clark right, he would do anything, and the rumors of her designs to marry him to her daughter, are too indefinite, and of such a hearsay character that they cannot be regarded as adding any corroboration to the petition. The petition sets forth the age and residence of the alleged incompetent, the property possessed by him, and the names of his heirs at law and next of kin. It also states that he resided for many years on the premises, a part of which he now occupies, with his mother, who cared for him, and transacted his business for him; that she died July 27, 1898; that since that time Clark has resided on said premises with one Philip Powers, who works the land and occupies a part of the house; "that the said Clark is incompetent to manage himself or his affairs, and is of weak mind, and easily worked upon by any person who obtains a controlling influence over him." This is the allegation by which it is sought to bring the case within the statute. It can hardly be said that it presumptively appears from this statement that Clark is "incompetent to manage himself or his affairs, in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory and understanding or other cause." Even if the petition had stated that he was incompetent in consequence of a weak mind, it would not have been sufficient; but it does not aver that the alleged incompetency has any relation, as a result, to the alleged weak mind. The cases before referred to furnish abundant authority for holding that the petition in this respect is insufficient. The inquisition states "that the said Eugene P. Clark is an incompetent person, and is unfit to manage his own affairs; that such infirmity manifests itself in weakness of mind."

This finding of the jury is insufficient to satisfy the court that the case is one contemplated by the statute. The jury have not found that the respondent is a lunatic, an idiot, an habitual drunkard, or an imbecile. They have not found that he is a person of unsound mind. They have not found that he is mentally incapable. They have not found that he is incompetent to manage himself or his affairs in consequence of any of the disabilities mentioned in the statute. There must be more than "weakness of mind," and it seems to me that there must be a distinct and definite finding that the person proceeded against is one of these four classes of persons mentioned in the statute, and above referred to, either by characterizing him as such, or by using such language as will inform the mind and conscience of the court that he is such; and, if this be found, the incompetency follows as a matter of course. In re Morgan, 7 Paige, 236; In re Rogers, 9 Abb. N. C. 144; In re Shaul, 40 How. Prac. 206. There are, no doubt, many cases of weakness of mind in which it would be far better for the individual if some proper person could be put in charge of his property; but the statute says that this weakness of mind must be of such a degree as to amount to imbecility, before the court can deprive a person of the right (which every man has) of controlling his own affairs, and disposing of his property as he may see fit, whether wisely or foolishly. A careful examination of the testimony in this case convinces me that the jury might have found a verdict and returned an inquisition which would have brought the case within the language and meaning of the statute, but, as they did not see fit to do so, the court cannot supplement their verdict. It follows, therefore, that the motion to confirm the inquisition and for the appointment of a committee must be denied, and the petition dismissed, but without prejudice to the presentation of another or amended petition; and, if presented in proper form, a new commission will issue, and a new trial be ordered before the same or another commission.

Motion to confirm inquisition and for the appointment of a committee denied, and the petition dismissed, without costs to either party.