ASA WALKER, *as Guardian*, v. DANIEL S. COATES *et al.*
### No. 128.

INSANITY— *adjudication of, by probate court, only prima facie evidence of.* On an inquisition duly instituted and had C. was adjudged to be of unsound mind and a fit person to be committed to the insane asylum, but no guardian of his estate was appointed. Pursuant to such adjudication he was confined in the asylum, from which he was afterwards discharged as restored to his right mind, but no adjudication thereof was had in the probate court which committed him. Thereafter C. and wife executed a mortgage on their homestead, which, in an action to foreclose the same, was alleged to be void because of unsoundness of mind on the part of C. at the time it was executed: *Held*, that, while evidence of adjudication of unsoundness of mind made out a *prima facie* defense, it was not conclusive, and it might be shown by any competent evidence that C. was of sound mind at the time he executed the mortgage.

Error from Smith District Court. Hon. Cyrus Heren, Judge. Opinion filed December 5, 1896. *Reversed.*

This is an action brought in the District Court of Smith County by Asa Walker, guardian, to recover

14—5 KAN. APP.

from Daniel S. Coates and Roxana D. Coates, his wife, the amount due on a promissory note executed by them in the principal sum of nine hundred dollars, bearing date April 23, 1889, payable to Willis G. Myers, and by him indorsed to the plaintiff; and also to foreclose a real-estate mortgage, in the form of a deed of trust, given by Coates and wife to Edward E. Holmes, trustee, to secure the payment of said note. Daniel S. Coates, although personally served with summons, made default. Several months after the commencement of the action, one W. E. Coates, as guardian of Daniel S. Coates, was made a party defendant, and he and Roxana D. Coates filed their separate answers. In these they denied generally the allegations of the petition; alleged that, at the time of the execution of the pretended mortgage mentioned in the petition, the real estate therein described was the homestead of said Daniel S. and Roxana D. Coates; that said pretended mortgage was not executed by their joint consent; that at the time of the execution of the said instrument sued on the said Daniel S. Coates was insane, and had been so declared by the Probate Court of Smith County, and that he was incapable of giving his consent to the making of any contract at the time of the execution of the said pretended mortgage; and prayed that the same be canceled and held for naught. The reply of the plaintiff denied each and every allegation of new matter contained in the answers. It also alleged specifically that at the time of the execution of the note and mortgage Daniel S. Coates was of sound mind; that the mortgage was given and the money loaned thereon in good faith; that at that time there was nothing in the appearance or conduct of the husband to indicate that he was of unsound mind or incapable of the transaction of business, but that

WALKER, *Guardian*, v. COATES.     211

Dec. 5, 1896.          Opinion.   Clark, J.          C. Div.

he was then apparently in possession of his mental faculties, and was engaged in the transaction of business for himself; that, at the time of making said note and mortgage, there were two mortgage liens on the land, amounting to $666, which were paid for the joint benefit of the defendants out of the proceeds of the note and mortgage in suit, the residue being applied by them to their joint use. The plaintiff recovered a verdict and personal judgment against Roxana D. Coates for the amount due on the note, but was denied a judgment against Daniel S. Coates. and a decree foreclosing the mortgage. He brings the case here for review.

*Cook & Gossett*, for plaintiff in error.

No appearance for defendants in error.

CLARK, J.   The principal errors complained of are, the various rulings of the court upon the admission of evidence offered, and the instructions to the jury. Under the pleadings, the court properly held that the burden of proof was on the defendants. They proved that the real estate mortgaged was the homestead of the mortgagors, who were husband and wife; that the husband, upon proceedings instituted in the Probate Court of Smith County, was, on December 6, 1879, duly adjudged to be of unsound mind, and an order was then issued for his commitment to the State Insane Asylum; that similar proceedings were instituted in said court on January 29, 1884, and January 25, 1888, respectively, and in each instance he was again adjudged insane and ordered to be committed to the asylum. The record shows that no guardian, either of his person or estate, was appointed until after the commencement of this action. The court overruled a demurrer to the evidence of the defendants,

212        WALKER, *Guardian*, v. COATES.

N. Dept.            Opinion.    Clark; J.            5 Kan. App.

and sustained objections to the introduction of evidence by the plaintiff tending to show that the mental disease to which Daniel S. Coates was subject was not chronic in its nature; that he had been discharged from the State Insane Asylum in the years 1884, 1887, and 1888, respectively, restored to his right mind; that he had been regularly adjudged insane on May 20, 1889, by the probate court, and committed to the asylum; that he was discharged therefrom on August 20, 1889, restored to his right mind; that he was again adjudged insane on April 25, 1890, and thereafter again committed to the asylum, where he was confined at the time of the trial of this action; and that the defendant, W. E. Coates, was in 1892 duly appointed guardian of his person and estate. The plaintiff also sought to introduce evidence tending to show the conduct and appearance of the husband, and the actual condition of his mind at the time he executed the note and mortgage sued on, and the disposition that was made of the proceeds of the loan; but the court ruled that such evidence was irrelevant and immaterial. The act concerning lunatics and drunkards, chapter 60, General Statutes of 1889, in substance provides, that upon an inquisition of insanity, if the jury should find that the subject of the inquiry is insane and is a fit person to be sent to the insane asylum, the court should enter an order that he be so committed, and should appoint a guardian of his person and estate, who should publish notice of his appointment, take possession and control of the property of his ward, and manage his estate; and the act then provides that no contract made by such insane person without the consent of his guardian shall be valid or binding. Section 37 of that act provides:

"If any person shall allege, in writing, verified by

WALKER, *Guardian*, v. COATES.                213

Dec. 5, 1896.          Opinion.   Clark, J.          C. Div.

oath or affirmation, that any person declared to be of unsound mind or an habitual drunkard has been restored to his right mind or to temperate habits, the court by which the proceedings were had shall cause the facts to be inquired into, either by a jury or without a jury, as may seem proper to the court."

The next succeeding section provides :

" If it shall be found that such person has been restored to his right mind or to temperate habits, he shall be discharged from care and custody, and the guardian shall immediately settle his accounts, and restore to such person all things remaining in his hands, belonging or appertaining to him."

It is evident from an examination of the record that the court, in its rulings upon the introduction of the evidence offered, proceeded upon the assumption that proof that a person had, in an inquiry duly instituted under the provisions of the act above mentioned, been adjudged insane, would raise a conclusive presumption that such mental condition continued to exist until overcome by a finding of restoration to sanity, after due inquiry in accordance with the provisions of section 37 of that act ; and that any contract entered into by such insane person between the adjudication of insanity and the decree of restoration, would be void unless assented to by his guardian. This is the natural inference which would follow the perusal of the following instruction to the jury :

" Under the law of this State, no contract of a person found to be of unsound mind by an inquisition before the probate court under the statutes relating to lunatics, made without the consent of his guardian, is valid or binding ; such inquisition is conclusive until set aside by a subsequent inquisition. You will therefore find for the defendant Daniel S. Coates, and W. E. Coates, his guardian. You are also instructed that no lien whatever was created by the

214 WALKER, *Guardian*, v. COATES.

N. Dept. Opinion. Clark, J. 5 Kan. App.

mortgage upon the homestead of the defendants, Daniel S. Coates and Roxana D. Coates. Your verdict therefore should be a verdict personally against Roxana Coates only."

We think that the statutory incapacity to contract is not entirely dependent upon the state of mind of the person who has been adjudged insane, but upon the further fact that he is under guardianship, and that the possession and control of his property has, by virtue of the appointment and qualification of a guardian, been transferred to the latter, leaving in him nothing with respect to which he can contract. But if no guardian has in fact been appointed, there is no apparent reason why a contract entered into by one who had been adjudged insane, after his restoration to sanity, should not be held valid and binding. This seems to have been the view taken by our Supreme Court in *Water-Supply Co. v. Root* (56 Kan. 187). There a person had been adjudged insane, but, as in this case, no guardian of her person or estate was appointed. She was subsequently discharged from the asylum on account of her improved condition, and several years thereafter made the contract then under consideration by the court. At the time she made the contract she was in fact of sound mind, capable of contracting. In that case, Mr. Justice Allen, speaking for the court, said:

"There are two main purposes to be subserved by trials in the probate court of persons alleged to be insane. One is that they may be placed in an asylum for treatment of their disease; the other, that they may be placed under guardianship, and their property taken care of. . . . Section 37 of this act makes provision for inquiring into the question of the restoration of a person of unsound mind or an habitual drunkard, and by the succeeding section it is pro-

WALKER, *Guardian.* v. COATES.     215

Dec. 5, 1896.          Opinion.   Clark, J.              C. Div.

vided that, if it be found that such person has been restored, he shall be discharged from care and custody, and his guardian shall immediately settle his accounts. The question presented, then, is, whether a person who has been adjudged insane and placed in an asylum for treatment, and has thereafter been discharged from the asylum because of her improved condition, is conclusively presumed to continue insane, notwithstanding the fact that she has no guardian and is not under treatment for insanity, until a formal adjudication shall be had finding that she has been restored to her reason. After her discharge from the asylum, and after her restoration to reason, in fact, the only purposes such an adjudication could serve would be discharge her guardian, if she had one, to restore her to the possession of her property, if she possessed any, and to remove her disability to enter into contracts. We think it would be extremely hazardous to hold that all contracts made by a person in fact sane and not under guardianship, are void merely because of a prior adjudication of insanity, and a failure to have an adjudication of restoration to reason.''

And the law of that case as announced by the court is as follows :

'' Where a person has been duly adjudged insane, but no guardian of her person and estate has been appointed by the probate court, and where such person, after having been committed to the insane asylum, is discharged in an improved condition, and afterward entirely recovers her reason, held, that a contract entered into by her more than seven years after such adjudication of insanity, and after such entire recovery of her reason, is valid without any adjudication by the probate court that such person has been restored to reason.''

We think that decision applies with equal force to the facts now under consideration. The said act concerning lunatics and habitual drunkards authorizes the superintendent to discharge any patient committed

216    WALKER, *Guardian*, v. COATES.

N. Dept.          Opinion.   Clark, J.        5 Kan. App.

to the asylum, and provision is made for a notification from the proper officer of the asylum to the probate judge of the county, giving the name of the patient and date of his discharge, and stating whether the patient had been restored to his right mind or not. The general rule is, that every man is presumed to be sane until the contrary is shown; and at common law, where habitual unsoundness of mind has been shown to exist, such condition will be presumed to continue until this presumption is rebutted by competent proof. If a guardian of the person and estate of a person who has been duly adjudged insane has been appointed by the proper court, we think, under the statute, the presumption of continued insanity of the person so adjudged insane could only be overcome by following the statutory direction set out in section 37 of the act above mentioned. If no such guardian has been appointed, the discharge of such person from the insane asylum as restored to his right mind, would be deemed sufficient to overcome the presumption that the insanity continued to exist after the person had been adjudged insane; or, if the person had in fact been restored to sanity, any competent evidence tending to establish that fact would be admissible to overcome the presumption of insanity caused by the adjudication of insanity. In this case no guardian had been appointed. The court refused to receive evidence tending to show that Coates had been restored to his right mind, or that he had been discharged from the asylum because of such restoration. In these respects the court erred, and in directing a verdict and in overruling a motion for a new trial the court committed reversible error.

The judgment will therefore be reversed and the cause remanded for a new trial.