PEOPLE ex rel. REIBLICH v. WALDO, Police Com'r.    (No. 5722.)

(Supreme Court, Appellate Division, First Department.   May 1, 1914.)

1. MANDAMUS (§ 174*)—TAKING CASE FROM JURY—FACT CONCLUSIVELY ESTABLISHED.

On mandamus to restore relator to police duty, where it appeared that at the time of his dismissal relator had been legally adjudged insane and was then confined in an asylum, a verdict should have been directed for the defendant, since the relator had been judicially determined to be directly within the provisions of New York Charter (Laws 1901, c. 466) § 300, authorizing the dismissal of policeman insane so as to be unable to perform full police duty.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 386, 387; Dec. Dig. § 174.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—POLICEMEN—DISMISSAL—HEARING.

Under New York Charter (Laws 1901, c. 466) § 300, authorizing the dismissal of any policeman found guilty of dereliction of duty after charges have been preferred and a hearing had thereon, and also the dismissal of any policeman who is insane so as to be unable to perform full police duty, it is not necessary that a policeman be given notice and a hearing before his dismissal for insanity.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

Appeal from Special Term, New York County.

Mandamus by the People, upon the relation of August Reiblich, against Rhinelander Waldo, as Police Commissioner. From an order setting aside a special verdict in favor of the relator and ordering new trial, the relator appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Jacob Rouss, of New York City, for appellant.
Terence Farley, of New York City, for respondent.

HOTCHKISS, J. On June 27, 1910, relator reported sick to a police surgeon and continued so to report until about July 12th, when the surgeon sent him to Fordham Hospital and later to the Psychopathic Ward at Bellevue. On July 20th, on petition of the deputy commissioner of charities, the certificate of two medical examiners in lunacy, and the affidavit of relator's wife, under proceedings taken before a justice of the Supreme Court in pursuance of the Insanity Law (Laws 1896, c. 545, art. 3, §§ 60, 61, 62, and 63; Consol. Laws, c. 27), relator was adjudged insane and committed to the Central Islip State Hospital. On August 31st, the chief police surgeon directed that a medical survey be held upon relator to determine his ability to perform police duty. Pursuant to an order issued on this recommendation, three police surgeons were on September 2d appointed by the commissioner to make the examination. On September 6th, these surgeons made their report in which they stated that the superintendent of the Central Asylum believed relator to be "greatly improved, and as we found him progressing nicely to what we believe to be an ultimate recovery, we suggest that he be kept on the sick list for a period of sixty days." On September 22d, the chief surgeon reported to the commissioner that, while the relator was at present of unsound mind and unfit to perform full police duty, it was the consensus of medical opinion "that his present condition might not be permanent" and that the three police surgeons had suggested that relator be kept under observation for 60 days longer. The chief surgeon concluded his report as follows:

"As, however, even if the officer should recover from his present incapacity it might be thought unwise to intrust him with the powers and responsibilities of a police officer, I respectfully invite attention to the provisions of section 300 of the Charter (Laws 1901, c. 466) which seems to contemplate such a condition as that of" relator.

On the same day the commissioner issued his order reciting the foregoing report of the chief surgeon and directed that by virtue of section 300 of the Charter the relator be dismissed from the force.

The relator remained in the Central Asylum until October 30th, when he was discharged as cured. After his discharge, he applied for a peremptory writ directing the commissioner to restore him, among other things, upon the ground that he had had no notice of trial or hearing and that he was not insane or of unsound mind so as to unfit him to perform full police duty. Relator's motion for a peremptory writ was denied by the Special Term. The learned court, while expressing a doubt as to the validity of the action of the commissioner in dismissing the relator from the force, concluded that at least there was a question of fact as to what his mental condition was on September 22d, the date of his dismissal, and an alternative writ was directed to be issued to try that question. In the Matter of Reiblich,

71 Misc. Rep. 502, 130 N. Y. Supp. 597. On the trial of this issue the corporation counsel moved for the direction of a verdict, and on the denial of that motion he requested the court to submit to the jury the following questions:

(1) Was the relator * * * duly adjudged insane and a proper subject for custody and treatment in an institution for the insane, and was he committed to the Central Islip State Hospital at Central Islip, N. Y., an institution for the custody and treatment for the insane, by an order made, etc.

(2) Pursuant to said order, was the relator committed to the Central Islip Hospital on or about July 21, 1910, and did he there remain for treatment until on or about October 30, 1910? Both the foregoing questions the court directed the jury to answer in the affirmative, but the court thereupon denied the defendant's motion to direct a verdict in his favor. The court at the request of the relator submitted to the jury the further question whether the relator on September 22d was of unsound mind so as to be unable or unfit to perform full police service. The jury answered this question in the negative, and their verdict was set aside by the court.

[1] I think the verdict was properly set aside, and also that the court erred in refusing to direct a verdict as requested by defendant. At the time of his examination by the three police surgeons on September 6th and as well on September 22d, when he was dismissed, relator was confined in an asylum in pursuance of a commitment issued pursuant to law. This commitment was an adjudication of insanity (Sporza v. German Svgs. Bank, 192 N. Y. 8, 20, 22, 84 N. E. 406; Banker v. Banker, 63 N. Y. 409, 413), and, the relator being actually confined as an insane person at the time of his dismissal, it necessarily followed that he was then unable to perform any police duty whatsoever. He was thus judicially determined to be directly within the provisions of section 300 (see post), and his dismissal was justified.

[2] By section 300 of the Charter, the police commissioner is authorized, among other things, to make and enforce rules for the government and discipline of the police, and for the hearing and determination of charges against its members. It also provides that no member of the force "except as otherwise provided in this chapter," shall be fined, reprimanded, removed, suspended, or dismissed from the police force until written charges shall have been made or preferred against him "and until such charges have been heard before the commissioner or a deputy upon notice," etc. The section concludes with the following words:

"Any member of the police force who may hereafter become insane or of unsound mind, so as to be unable or unfit to perform full police service or duty, may be removed and dismissed from the police force by the commissioner."

It seems to me clear that the section embraces two entirely distinct subjects, the first pertaining to matters of dereliction of duty, which may properly be the subject of "charges," and the second, unsoundness of mind. With respect to the former, the section prescribes that there shall be no conviction or judgment against the officer until after notice and an opportunity to be heard. There is nothing in the sec-

tion indicating an intention to extend the right to a trial in case of insanity, nor does sound reasoning call for any such construction. The grounds for distinguishing between the circumstances attending a dismissal for dereliction of duty and those pertaining to mental incapacity are manifest. In People ex rel. Mitchell v. Martin, 143 N. Y. 407, 410, 411, 38 N. E. 460, a provision in the Consolidation Act (Laws 1882, c. 410) similar to the portion of section 300 quoted above was referred to by the court as a "summary remedy" for dismissal Under the charter, the department is provided with a medical staff whose duties with respect to members of the force are clearly defined. See People ex rel. Metcalf v. McAdoo, 184 N. Y. 268, 77 N. E. 17. It would be a most unfortunate limitation of the evident purpose of the charter to commit to the commissioner, aided by the medical staff, sole authority to ascertain and determine the ultimate fact of mental and physical efficiency of members of the force, as such efficiency is defined by the charter, if it were held that, on a proceeding or investigation to that end, the subject of the investigation was entitled as matter of right to produce witnesses and be represented by counsel, as if he were being tried upon "charges," as seems to have been the opinion of the learned justice who granted the alternative writ herein. In the present instance, as we have seen, the recommendation of the chief surgeon and the determination of the commissioner were based on a judicial determination binding upon the relator. It would be difficult to imagine a situation giving a member of the force less ground for objection than that which is here presented. On the record before the Special Term herein, I think the relator presented no grounds for relief and that the writ should have been dismissed.

It follows therefore that the order of the court below setting aside the verdict was right, and the order should be affirmed, with costs and disbursements. All concur.