Matter of the Estate of JENNIE L. BROBST, Deceased.

(Surrogate's Court, New York County, May, 1920.)

Evidence — witnesses — wills — trial — undue influence — Surrogates' Courts — when motion to set aside verdict and for a new trial denied.

> Testimony of disinterested witnesses that decedent, for long periods during the ten years next preceding the making of her alleged last will, had been addicted to the excessive use of intoxicating liquors and that when they failed to have an effect upon her, she drank spirits of ammonia, veronal and other drugs, is sufficient to support a finding of a jury that at the time of the making of said will she was of unsound mind, and a motion to set aside a verdict on that issue and for a new trial will be denied and a decree refusing probate entered.

> The finding of the jury that the alleged will was procured by undue influence exercised by the proponent, with whom for several years before decedent's death she had had meretricious relations, held to have been sustained by more than a fair preponderance of evidence.

> An order of the Supreme Court made pursuant to the Insanity Law eleven years prior to the death of the alleged testatrix was *prima facie* evidence of her insanity at the time of the entry of said order.

MOTION to set aside a verdict and for new trial.

Misc.] Surrogate's Court, New York County, May, 1920.

Levinson & Feinsod (Samuel J. Levinson, of counsel), for proponent.

M. H. Winkler, for contestant.

William J. Burke, special guardian.

FOLEY, S. Motion to set aside verdict and for a new trial. The motion is denied. The will gave the entire estate to one Alphonse Consolazion to the exclusion of testatrix' two sisters. The findings of the jury, first, that the decedent was of unsound mind at the time of the execution of the will, and, second, the will was caused or procured by undue influence, were clearly sustained by more than a fair preponderance of the evidence. Mrs. Brobst had been committed to an insane asylum in 1908 by an order of Mr. Justice Greenbaum. From 1908 down to the execution of the will in 1918 it appeared from the evidence of many disinterested witnesses that Mrs. Brobst had indulged excessively and for long periods in intoxicating liquors, and that when alcoholic stimulants failed to have an effect upon her she drank spirits of ammonia, veronal and other drugs. Without setting forth the testimony at length there was sufficient evidence to support the finding of the jury on this issue.

On the question of undue influence the evidence was even stronger. It appears that Dr. Consolazion picked up an acquaintance with Mrs. Brobst in 1915 on a street car in New York city while she was intoxicated. Just before this meeting she had made a will, which included her sisters in the distribution of her property. After her husband died, in 1916, his relations with her became more intimate; he visited her hotel nightly, and the jury, from the evidence, must have inferred that the relations between them were meretricious. He secured admission to her room in the Endicott Hotel,

where she was living, by pretending to be her family physician, when in fact, as admitted on the trial, he was not a doctor of medicine, but a doctor of literature. His testimony was that he received the latter degree from the University of Naples.   Although meretricious relations are not in themselves proof of undue influence, they are a subject for careful scrutiny. *Matter of Mondorf,* 110 N. Y. 450, 456.   Consolazion borrowed large sums of money from Mrs. Brobst.   In 1917, about a year before the will was drawn, she threatened suit for breach of promise of marriage by him and for moneys loaned.   Actions were also brought by Consolazion's brother against her.   This litigation was compromised by the return of part of the money to her.   Shortly thereafter the proponent appears to have reinstated himself in the good graces of the decedent, and in a short time he resumed his domination over her mental condition and her financial affairs. It was shown that her continued dissipation, which he encouraged by supplying her with liquor, left her mind susceptible to his control.   Mrs. Brobst died in 1919 of Bright's disease.   She had suffered from it for a period of four years prior to her death, and it is significant, too, that she was treated during this time by Consolazion's personal physician.   The will in question was drawn by Consolazion's attorney, who had never before acted for Mrs. Brobst, and had but a few months previous represented Consolazion and his brother, then hostile to her, in litigation.   It was drafted in the office of this lawyer.   It was not executed under his immediate direction in the customary manner of practicing attorneys, but was delivered to her unexecuted.   In company with Consolazion she thereupon took it to the Hudson Trust Company for execution.   Although not present at the actual execution, the testimony showed that he was in another room

of the company's offices.  Consolazion appears to have
continued his purpose and design to obtain her prop-
erty, if possible, in her lifetime, or ultimately by oper-
ation of the will made by her in his favor.  The evi-
dence shows that on her deathbed on the day before
she died checks aggregating $800 were written out
by him and signed by her.  These and other facts in
the evidence left but one conclusion for the jury to
draw.  *Matter of Marshall,* 189 App. Div. 477, 480.
Undue influence is an affirmative assault. upon the
validity of a will.  The burden was on the contestant
to establish the undue influence (*Matter of Kindberg,*
207 N. Y. 220), and this burden has been sustained.
The influence of proponent at the time the will was
made overcame and took away the power of the testa-
trix to act freely of her own will.  The contestant was
bound to produce facts showing coercion or duress.
The evidence established a coercion destructive of the
testatrix's free agency, and proved an irresistible
importunity, which forced the testatrix to act against
her free will.  *Rollwagen* v. *Rollwagen,* 63 N. Y. 504.

Upon the trial the court regarded the order of com-
mitment of Mrs. Brobst to an asylum in 1908 as not
an adjudication that she was of unsound mind at that
time, under authority of the recent decision of the
Appellate Division, first department, in *Matter of
Barney,* 185 App. Div. 782, 796.  Laughlin, J., there
said that such an order " was undoubtedly competent
to show that the testatrix had been so confined in the
asylum and the jury might fairly infer therefrom that
during that time she was of unsound mind.  *  *  *
The commitment was *ex parte* and was, therefore, *not
an adjudication* or competent to show that she was
insane at the time."  Citing *Sporza* v. *German Sav.
Bank,* 192 N. Y. 8, 33, and other cases.

The question suggests itself as to the distinction

between the present case and *Matter of Barney.* Here the commitment was by the Supreme Court pursuant to its modern legislative jurisdiction under the Insanity Law and its constitutional chancery jurisdiction over incompetents. In *Matter of Barney, supra,* the court construed the effect of a commitment by police justices in 1860. The Court of Appeals in *Sporza* v. *German Sav. Bank, supra,* holds that such an order is a judicial determination. The opinion there cites *People ex rel. Morrell* v. *Dold,* 189 N. Y. 546, which decided that an order exactly similar to the one here committing a person to the same sanatorium—Rivercrest—where personal appearance of the incompetent in the proceeding was dispensed with, was "a valid adjudication of his insanity." Under section 80 of the Insanity Law the commitment of a person is authorized upon an order made "adjudging such person to be insane." I am inclined to agree with Surrogate Schulz in his opinion in *Matter of Prentice,* 110 Misc. Rep. 456, 462, that the *Barney* case does not apply to a commitment by the Supreme Court, and that such an order is *prima facie* evidence of insanity at the time it is entered. See opinion of Haight, J., *Sporza* v. *German Sav. Bank, supra,* 20, 21.

Probate denied.