GIUSEPPA BARABERA MARTELLO, Plaintiff, *v.* ANTONIO CAGLIOSTRO, Defendant.

Supreme Court, Kings Special Term, January, 1924.

Incompetent persons — action for admeasurement of dower — commitment to state hospital of incompetent, pursuant to Insanity Law, sections 80–84, deemed adjudication of insanity for all purposes — commitment not followed by appointment of committee conclusive only of incompetency at time of adjudication — prima facie evidence of continuance of incompetency — plaintiff discharged from hospital as "improved," subsequently present at closing of title and executing deed to real property — when plaintiff deemed incompetent.

The commitment to a state hospital of one who has been duly adjudged under sections 80–84 of the Insanity Law to be insane must be deemed an adjudication of incompetency for all purposes, and has the same effect as a similar adjudication by inquisition under sections 1356–1373 of the Civil Practice Act.

Where a commitment under the Insanity Law is not followed by the appointment of a committee, it is conclusive of the fact that the person was an incompetent at the time of the adjudication but is only *prima facie* evidence that such incompetency continued and existed at a later date; this presumption, however, may be overcome by proof showing the contrary to be the fact.

In January, 1910, plaintiff was adjudged to be insane by one of the county judges of Kings county acting under the provisions of section 80 of the Insanity Law, and was thereupon committed to a state hospital where she remained until July 30, 1911, at which time she was discharged as "improved." In an action for the admeasurement of dower in lands conveyed by her husband in September, 1911, it was conceded that she was present when the deed was signed and the fact that she did join therein was established not only by the acknowledgment appearing thereon but by other evidence. *Held*, that her claim that she did not join in the deed will be overruled.

Aside from the papers upon which the order for plaintiff's commitment was granted and the certificate of the superintendent of the hospital, when she was discharged as "improved," there was no proof either medical or otherwise that could be the basis of a finding of fact either way as to her mental condition. *Held*, that the question of plaintiff's mental condition at the time the deed was signed was to be determined upon the order of commitment and its effect, and it being presumptive evidence that plaintiff was incompetent when she executed the deed, in the absence of evidence sufficient to show the contrary, that must be the finding here.

The trial to be continued on a date stated to enable both sides to offer such other proof as may be proper upon the other questions involved herein, at which time the question whether plaintiff can maintain the action without a guardian will be considered.

ACTION for admeasurement of dower.

*James P. Timoney*, for plaintiff.

*Edward M. Perry (Lynn C. Norris*, of counsel), for defendant.

CROPSEY, J. Plaintiff seeks to have her dower admeasured in property which her husband owned and which he conveyed in September, 1911, he having recently died. Her claim is two-fold: That she did not join in the deed, and that if she did she was then incapable of making a contract because she was insane.

The first contention can be readily decided. The fact that plaintiff did join with her husband in the deed is established, not only by the acknowledgment appearing thereon but also by other evidence. Concededly, she was present at the time the deed was signed, and the testimony of her son that she did not sign it is not only contradicted, but further is made incredible by the fact he not only signed his name to the deed as a witness to plaintiff's signature but he also wrote the plaintiff's name on the deed beside the cross mark which she had made.

As to the second contention the proof is in a very narrow compass. In January, 1910, plaintiff was adjudged to be insane by one of the county judges of Kings county, acting under the provisions of the Insanity Law (§ 80), and was committed to a state hospital. There she remained until July 30, 1911, when she was discharged as " improved." The deed in which she joined was made September 15, 1911. There is no proof in the case, either medical or otherwise, aside from the papers upon which the order of commitment was granted, and the certificate of the superintendent of the hospital when she was discharged, as above stated, saying she was " improved " that could be the basis of a finding of fact either way as to her mental condition. Plaintiff's son testified that from the time she left the hospital up to the time the deed was signed and including the time of its execution plaintiff acted in a wild and irrational manner. As already stated, the court does not credit this witness. Besides, there is other testimony that at the time the deed was signed there was nothing abnormal in her appearance or actions. That proof, however, does not go to the extent of warranting a finding, even if it otherwise would be proper, that the plaintiff was at that time sane. The question of plaintiff's mental condition, therefore, must be decided upon the order of commitment and its effect, if any.

Two general methods are provided by statute for determining whether a person is insane. One of these is set forth in the Civil Practice Act, the other in the Insanity Law. The method under the former is either by inquisition or trial before a jury. Civ. Prac. Act, §§ 1356–1373. The method under the latter is prescribed in sections 80 to 84 of the Insanity Law. In every case, whether the adjudication has been under the provisions of the Civil Practice Act or those of the Insanity Law, the question of its

effect is twofold: One, its effect as to establishing the mental condition of the subject at the time of the inquisition or commitment, and the other, its effect upon the decision of the question of the mental condition of the subject at any later time.

There is a difference of opinion as to the effect of an adjudication upon an inquisition and an adjudication under the Insanity Law. And as the question here is as to the effect of a commitment under the latter, it may be of service to first consider the effect of an inquisition and the appointment of a committee thereunder, and then see whether there is any difference between that and the effect of a commitment under the Insanity Law.

An adjudication upon an inquisition, although followed by the appointment of a committee, is not evidence as to the mental condition of the subject at any time prior to the inquisition. *Boschen* v. *Stockwell,* 224 N. Y. 356. This is because of the provisions of section 1371 of the Civil Practice Act which were first put into the statute in 1874. Prior thereto it had been the custom upon adjudging a person to be insane under an inquisition to find for what period of time prior thereto the insanity had existed. Under this practice it had been held that the adjudication was presumptive evidence as to the existence of the mental state during that period preceding the determination which was fixed thereby as the period during which the insanity had continued. *Van Deusen* v. *Sweet,* 51 N. Y. 378, 386; *Banker* v. *Banker,* 63 id. 409, 413. Such adjudication and appointment of committee, however, are conclusive proof of the incompetency of the person at the time of the inquisition and also conclusively establish the fact that such condition continues during the life of the inquisition. *Hughes* v. *Jones,* 116 N. Y. 67, 73; *Wadsworth* v. *Sharpsteen,* 8 id. 388, 392; *Carter* v. *Beckwith,* 128 id. 312, 316; *Wallace* v. *Frey,* 27 Misc. Rep. 29; *Mainzer* v. *Avril,* 108 id. 230. This is unquestionably the settled law of this state. Under such conditions, therefore, the mental state of the subject cannot be shown to be different than as so adjudged either at the time of the determination or at any later time in any collateral proceeding. So long as the inquisition has life it is conclusive. Of course, it may be set aside by a direct proceeding, and if that results in a different determination the inquisition is no longer conclusive. Unless directly attacked, however, it may not otherwise be challenged.

To the above rule, however, there are a number of exceptions. Thus the determination by inquisition, although followed by the appointment of a committee, is not conclusive as to the competency of the subject in proceedings affecting his will (*Lewis* v. *Jones,* 50 Barb. 645; *Matter of Taylor,* 1 Edm. Sel. Cas. 375; *Matter of*

*Coe,* 47 App. Div. 177, 179; *Matter of Widmayer,* 74 id. 336; *Wadsworth* v. *Sharpsteen, supra);* or upon the trial of collateral issues between strangers to the proceeding (*Schoenberg & Co.* v. *Ulman,* 51 Misc. Rep. 83; revd. upon another point, 52 id. 104); or so as to prevent such person becoming a witness (*Hoyt* v. *Adee,* 3 Lans. 173; *Barker* v. *Washburn,* 200 N. Y. 280, 282, 283); or so as to make a marriage contracted by such person necessarily void (*Payne* v. *Burdette,* 84 Mo. App. 332; *Castor* v. *Davis,* 120 Ind. 231, 236; *Goodheart* v. *Ransley,* 28 Wkly. L. B. & Ohio L. J. 227. See, *contra,* *O'Reilly* v. *Sweeney,* 54 Misc. Rep. 408, which stated the general rule, but failed to note its exceptions); or to prevent such person legally acquiring a new residence (*Talbot* v. *Chamberlain,* 149 Mass. 57); or in prosecutions for crime (*Hempton* v. *State,* 111 Wis. 127, 133; *Montgomery* v. *Commonwealth,* 88 Ky. 509, 514, 515; *McCully* v. *State,* 141 Ark. 450, 452; *Reeves* v. *State,* 186 Ala. 14).

These exceptions to the rule, and the reasons given therefor, show that it is the fact there is a committee of the incompetent and not the mere adjudication of incompetency that gives the conclusive character to the determination as to all times subsequent thereto. The reasons for these exceptions are said to be that in those cases the committee cannot act for the incompetent, that the incompetent can continue to do such things as are not forbidden by the commission appointing the committee, that the only effect of the committee's appointment is to take from the incompetent the care and management of his property, and to prevent him making gifts or entering into contracts relating thereto. *Lewis* v. *Jones, supra; Wadsworth* v. *Sharpsteen, supra.* In other words, the general rule giving conclusive effect to the determination seems to be based upon the fact that a committee has been appointed and that it is against public policy under those conditions to permit an incompetent to do the things which the committee has been appointed to do for him. The rule is one of convenience and necessity to enable the committee to discharge his duties. When the reason for it disappears, the rule goes with it. *Thorpe* v. *Hanscom,* 64 Minn. 201, 205.

Thus, where there has been an adjudication under an inquisition, but no committee has been appointed, while it conclusively determines the incompetency of the subject at the time of the adjudication, it is not conclusive of that fact as to any time thereafter, but is then merely *prima facie* evidence of the incompetency and proof may be offered to overcome that presumption. *Southern Tier Masonic Relief Association* v. *Laudenbach,* 5 N. Y. Supp. 901, 904, 905. In that case Rumsey, J., writing, said (p. 904): " While the above rule as to the conclusiveness of these proceedings applies

in every case in which the committee has been appointed and qualified, and has taken possession of the estate of the lunatic, there must, I think, be some limitation of the rule in cases where that has not been done. The statute presumes that the state of insanity, like every other sickness, will not be continuous, and it provided a way to discharge the committee and restore his property to the lunatic, when he shall have been cured. Where no possession of property has been taken such proceedings are not necessary, and will not usually be taken. Still, I think that a judgment as to the physical or mental status of a person, while conclusive at the time it is found, may properly be controlled by the presumptions which are raised, and permitted to obtain in ordinary business affairs. We all know now that insanity, as distinguished at least from idiocy, is not incurable, but that people do frequently recover from it.

" Starting with the fact that this inquisition conclusively shows the existence of such a state of mind, at the time it was taken, we may apply the knowledge which we have that there may be a recovery from it, and allow the party claiming against it to show that, by lapse of time or otherwise, the patient has recovered, and has become again able to contract. Where the property of the lunatic is in possession of a committee, this should be done before the court which appointed him on a motion to discharge the committee. But where the committee did not act, I see no objection to allowing the person who asserts present sanity to show the fact of recovery, not to avoid the inquisition, but to show the subsequent recovery." To the same effect see *Gibson* v. *Soper*, 6 Gray, 279, 286; *Willwerth* v. *Leonard*, 156 Mass. 277, 279; *Walker* v. *Coates*, 5 Kan. App. 209, 214, 216.

It remains to be considered whether there is a different rule when there has not been an inquisition, but instead a commitment under the Insanity Law. If such commitment has been followed by the appointment of a committee under the old provision of the Code, then the situation is exactly the same as if there had been no commitment under the Insanity Law, for the proceeding to appoint a committee under sections 1356 to 1373 of the Civil Practice Act (formerly provisions of the Code of Civil Procedure) are the ones covering inquisition, and a committee so appointed is appointed upon an inquisition. But if following a commitment under the Insanity Law a committee is appointed under section 1374 of the Civil Practice Act, what is the effect? That section contains the provisions that were formerly in sections 2323a and 2323b of the Code of Civil Procedure, and which were added by chapter 824 of the Laws of 1895. Prior thereto no committee of an incom-

petent could be appointed except under the provisions of the Code of Civil Procedure, which meant by inquisition or after jury trial. The added enactment (now Civil Practice Act, section 1374) provided that when an incompetent " has been committed to a state institution in any manner provided by law " and is an inmate thereof, a committee for him may be appointed upon petition of the superintendent or other officer having jurisdiction of the institution.    Subd. 1. The petition must state that the incompetent has been legally committed to and is at the time an inmate of the institution.    Subd. 2. Upon this and other formal allegations of residence, relatives, etc., after notice given as prescribed, a court or justice may appoint a committee " if satisfied of the truth of the facts required to be stated in such petition," or the court or justice " may require any further proof which it or he may deem necessary."    Subd. 5. There is no requirement that the incompetency of the person be either alleged or proved, except as that is established by the fact of his commitment, and the commitment itself.    The incompetency need not be found upon such an application.    It is not an issue there.    Seemingly it is deemed to have been established by the commitment and not to be open for further consideration.    *Trust Company of America* v. *State Safe Deposit Co.*, 187 N. Y. 178, 183.

This method of appointing a committee, *i. e.*, upon the petition of the official of the state institution, based upon a commitment under the Insanity Law, is constitutional.    *Sporza* v. *German Savings Bank*, 192 N. Y. 8.    The " further proof " which may be taken, as provided in section 1374, does not mean proof of incompetency.    It may be the court would wish to know about the incompetent's property, or more about his relatives, with a view to determining who should be appointed a committee, or other facts bearing upon the propriety of the appointment.    See *Matter of Walker*, 57 App. Div. 1, 4.

Why then should not the same results follow and the proceeding have the same force and effect where a committee is appointed under this section following a commitment under the Insanity Law, as if the committee was appointed as otherwise prescribed? This method was provided undoubtedly to enable ·the state to obtain compensation for the support of the incompetent.    See Code Civ. Pro. § 2336a, added by the same chapter that added sections 2323a and 2323b, now Civ. Prac. Act, § 1374, subd. 7a. But that fact cannot change the effect of the committee's appointment.    A committee so appointed has the same powers as one appointed under the other provisions of the statute.    No distinction is made between them.    In either case there has been an adjudication of incompetency and the appointment of a committee.

The statute makes no distinction in the effect or result of the determination and appointment under the two methods. All the reasons for holding the appointment of a committee under an inquisition to be conclusive of the fact of incompetency during the life of the inquisition apply equally to the appointment of a committee under section 1374 of the Civil Practice Act, following a commitment under the Insanity Law. Therefore, it must be held that the effect of the appointment of a committee by the latter method is the same as if a committee had been appointed by the other method. Hence, if a committee had been appointed in the case at bar, the fact of the incompetency of the plaintiff when she joined in the deed would be conclusively established by the records, and no proof showing otherwise would have been admissible.

But there was no committee. Therefore, the question is, what effect, if any, has the bare commitment? Here we find division of opinion. Some decisions hold that such a commitment alone is but an *ex parte* determination and does not fix the status of the person concerned, and is neither presumptive nor conclusive proof of the fact of incompetency — in short it is not evidence at all and should not be received. *Wagener* v. *Harriott,* 20 Abb. N. C. 283; *Matter of Barney,* 185 App. Div. 782, 796; *McCarthy* v. *Bowling Green Storage & Van Co.,* 182 id. 18, 20; *Scheuer* v. *Atlantic Milling Sales Corp.,* 187 N. Y. Supp. 497; *Leggate* v. *Clark,* 111 Mass. 308; *Dowdell, Petitioner,* 169 id. 387, 388; *Keely* v. *Moore,* 196 U. S. 38, 45, 46; *Knox* v. *Haug,* 48 Minn. 58; *Goodwin* v. *State,* 96 Ind. 550, 557. Other cases hold that such commitment is an adjudication of incompetency and evidence of the mental state of the subject. *Sporza* v. *German Savings Bank, supra; People ex rel. Reiblich* v. *Waldo,* 162 App. Div. 417, 419; *Matter of Brobst,* 112 Misc. Rep. 66, 70. See, also, note in 7 A. L. R. 568–608, particularly at pp. 590–592, collecting other cases showing conflicting rulings.

The case of *Wagener* v. *Harriott, supra,* was decided before the enactment of the statute authorizing the appointment of a committee upon a commitment under the Insanity Law, and, moreover, that case does not flatly decide that such commitment is not some proof of the mental state of the subject. The opinion in *Matter of Barney, supra,* cites for its contention that such a commitment is not an adjudication, and is not competent to show the person was insane (p. 796), the *Sporza Case, supra,* and the case of *People ex rel. Peabody* v. *Chanler,* 133 App. Div. 159. This latter case did not pass upon the point in question. The *Sporza* case holds exactly the opposite of the proposition in support of which it is cited. The citation of the *Sporza* case in *Matter of*

*Barney, supra,* refers to page 33. At that page is found a portion of the opinion of Willard Bartlett, J., which, so far as the point in question is concerned, was a dissenting opinion concurred in by only one other member of the court. He said that such a commitment was not an adjudication. The majority opinion, however, written by Haight, J., and concurred in by four other members of the bench, said unequivocally that such a commitment was a " judicial determination." P. 20. And in the same opinion, referring to the case of *People ex rel. Morrell* v. *Dold,* 189 N. Y. 546, it is stated that that case in effect held that a similar order of commitment was " a valid adjudication of his insanity." P. 21. The language used in the *McCarthy Case, supra,* was purely *obiter.* The point under discussion was not involved in the decision there made. The *Scheuer Case, supra,* cited in support of its holding only the *McCarthy* and *Barney* cases.

The decision of the Court of Appeals in the *Sporza* case seems to have settled this question. A commitment under the Insanity Law must be deemed to be an adjudication of incompetency. It necessarily is so considered when an application for the appointment of a committee is made under section 1374 of the Civil Practice Act. If it is such a determination for that purpose, it must be for all purposes. It, therefore, should have the same effect as a similar adjudication under an inquisition. 3 Wigm. Ev. (new ed.) 514, 515. The author above says (p. 515): " The one proceeding, as much and as little as the other, ' fixes his status,' that is, the one confines itself to his property, and the other to his liberty,— the latter right being hardly less important than the former. In short, there seems to be no real reason for enforcing a distinction, as to admissibility in evidence, between the two sorts of inquisition."

*Newton* v. *Mutual Benefit Life Insurance Company,* 76 N. Y. 426, does not hold to the contrary. That case was decided upon the form of the questions and answers in the application, and not upon the effect of the commitment.

The conclusion is that a commitment under the Insanity Law, not followed by, the appointment of a committee, is conclusive only of the fact that at the time of the adjudication the person was incompetent and is *prima facie* evidence that such incompetency continued and existed at a later date, but this presumption may be overcome by proof showing the contrary to be the fact.

In the case at bar the adjudication is, therefore, presumptive evidence that the plaintiff was incompetent when she executed the deed, and as there is not sufficient evidence to show the contrary that must be the finding.

The trial will be continued on January 15, 1924, at ten A. M.,

to enable both sides to offer such other proof as may be proper upon the other questions involved. Whether the plaintiff may maintain the action without a guardian will also be considered.

Ordered accordingly.