In the Matter of ANNA MATSON, an Inmate of Brooklyn State Hospital.

Supreme Court, Kings County, May 23, 1944.

*Cullen & Dykman* for Brooklyn City Safe Deposit Company, petitioner.

*Nathaniel L. Goldstein, Attorney-General (Louis E. Cooper* of counsel), for Clarence H. Bellinger, as Superintendent of Brooklyn State Hospital.

*William E. Orr* for Anna Matson.

BROWER, J. Prior to the enactment of section 51-a of the Mental Hygiene Law this court denied an application made by the State Department of Mental Hygiene for permission to inspect the contents of a safe deposit box which had been leased from a safe deposit company by an individual, who, at the time of the application, was a patient in a State institution for the mentally ill. The patient had not been judicially declared incompetent at the time of the application, and no committee of her person or property had been appointed. The application was denied upon the ground that " the relief sought would constitute an unauthorized invasion of the patient's personal rights "; and that " the court is without power to grant the order prayed for." (See *Matter of Lehr*, 175 Misc. 914.)

In 1942, subsequent to the rendition of the above decision, the Legislature enacted section 51-a of the Mental Hygiene Law,

the provisions of which read as follows: " § 51-a. *Discovery of property warranting application for appointment of committee.* For the purpose of discovering property owned by any patient or inmate of a state institution in the department which would warrant the making of an application for the appointment of a committee for such patient or inmate, the supreme court or a justice thereof and a county court or a judge thereof, upon the duly verified application of the superintendent of the institution wherein such patient or inmate is confined, made without notice or upon such notice to such persons or corporations as such court, justice or judge may require, whereby it is satisfactorily shown that a bank, trust company, safe deposit company, or other person, firm or corporation has in its or his possession or under its or his control papers belonging to such patient or inmate or that such person or inmate has leased a safe deposit box or that he had access to a safe deposit box which may contain papers and property belonging to him, may make an order directing such bank, trust company, safe deposit company, or other person, firm or corporation *to permit such* superintendent or a duly authorized representative named in the order to examine and make an abstract of any such papers and to open, examine and make an inventory of the contents of any such safe deposit box in the presence of an officer or representative of such bank, trust company, safe deposit company or other person, firm or corporation." (As added by L. 1942, ch. 747, § 2, eff. May 8, 1942.)

Pursuant to the foregoing statutory provisions, on March 2, 1944, the Superintendent of the Brooklyn State Hospital obtained an ex parte order permitting a representative of said hospital, or of the State Department of Mental Hygiene, to open a safe deposit box located in one of the branches of the Brooklyn City Safe Deposit Co., rented in the name of one Anna Matson. The latter is an inmate of the hospital. The purpose sought to be achieved by the ex parte order is the discovery of property belonging to the inmate " so that the State may take the following step after such discovery, to wit: to bring a proceeding in the Supreme Court for the appointment of a committee of the property of such inmate in the event that such an examination of the safe deposit box discloses property belonging to the inmate."

The safe deposit company, being apprehensive of its possible liability to the lessee under the provisions of the contract pursuant to which the box was leased, challenges the validity of the ex parte order, and moves before this court on notice to the

Attorney-General and to the inmate (for whom the court designated a lawyer to receive service of the petition in her behalf, pursuant to section 226 of the Civil Practice Act) to have it vacated and annulled. The ground for the motion by the safe deposit company is that section 51-a is unconstitutional, in that it authorizes an unwarranted and unlawful invasion of the personal and property rights of the lessee, and, moreover, that it impairs the obligation of the contract pursuant to which the box was leased.

The moving party may not predicate, as it seeks to do herein, the claim of unconstitutionality upon the basis that the statute violates the provisions of the Fourth and Fifth Amendments of the Federal Constitution. Those amendments are inapplicable to State legislation. (See *People* v. *Adams,* 176 N. Y. 351, 356; *People* v. *Richter's Jewelers, Inc.,* 291 N. Y. 161, 167; *People* v. *Defore,* 242 N. Y. 13, 20.) Since 1938, however, the State Constitution (art. I, § 12) has contained a provision against search and seizure similar to that embodied in the Fourth Amendment of the Federal Constitution; and, prior to 1938, a like provision was and is now contained in section 8 of the Civil Rights Law. The State mandate provides that: " The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Attorney-General, appearing in opposition to the present motion, seeks to avoid this constitutional mandate upon the ground that this is a mere " discovery " proceeding, preliminary to a possible application by the State, seeking reimbursement, for the appointment of a committee under section 1374 of the Civil Practice Act (under which an appropriate State officer may seek the appointment of " a committee of the person or property " of such an inmate). In support of such contention, it is stated that: " Sec. 51-a of the Mental Hygiene Law is a necessary adjunct to Section 1374 of the Civil Practice Act. It is in aid of the Court and places the person applying to the Court in a position to fully advise the Court of the property of the inmate. *It also helps to avoid appointing a committee unnecessarily.*"

The reasons thus advanced should not be permitted to weigh against fundamental rights. Constitutional prerogatives may not be disregarded upon the mere ground of expediency and convenience. The argument that a " discovery " proceeding is

" an incident to every matter in equity " is met by the answer that the employment of equity's powers must be exercised within the confines of equity's jurisdiction; and that equity's jurisdiction, like that at law, is to be exercised in obedience to constitutional restrictions.

It must be borne in mind that the inmate herein, although committed under the provisions of the Mental Hygiene Law, has never been judicially declared incompetent. Whatever doubt may have existed heretofore in this regard (cf. *Martello* v. *Cagliostro*, 122 Misc. 306, 313, which is cited by the Attorney-General in his brief) has been clarified by the decision of the Court of Appeals in *Finch* v. *Goldstein* (245 N. Y. 300, 304). As pointed out therein: " The purpose of the Insanity Law is to look after the person of the incompetent and has nothing to do with his property except as it may be charged with the expense of his maintenance." The term " judicially declared incompetent," as defined in the *Finch* case, was held to " have reference to proceedings under the Civil Practice Act for the appointment of a committee to take possession of and care for the property of an incompetent ", the court adding (p. 303) : " Until the appointment of a committee neither the State nor anyone else has any power or control over his property or any authority to act in his behalf. He alone remains in possession of his property and can dispose of it. If as a fact he be incompetent at the time he acts, his transactions may be set aside at his election either by himself or by a committee subsequently appointed. His acts before the appointment of a committee are thus voidable, not void."

Until the appointment of a committee not even the Supreme Court has power or jurisdiction to act with respect to such property rights. (Civ. Prac. Act, § 1358; *Matter of McGuinness*, 290 N. Y. 117, 118.) As stated in the *McGuinness* case: " By statute the custody of the person and the control and management of the property and affairs of an incompetent person and the use and disposition of his property are exclusively vested in the Supreme Court whose jurisdiction *must be exercised* by means of a committee appointed according to procedure provided in the Civil Practice Act (Civ. Prac. Act, §§ 1356–1358). There may be no interference with or disposition of his property until such jurisdiction is exercised and a committee appointed whose proceedings are subjected continuously to proper and orderly supervision of the court (*Matter of Schneider*, 234 App. Div. 722; *Matter of Rinn*, 242 App. Div. 523; *Finch* v. *Goldstein*, 245 N. Y. 300; *Matter of Frank*, 283 N. Y. 106)."

The Attorney-General seeks to justify the conduct of which approval is sought herein by assimilating it to procedure under provisions of the Tax Law applicable to decedents' estates under administration in the Surrogates' Courts. No analogy exists between the two situations. A surrogate, proceeding under such statutes, is clothed with full and unquestioned jurisdiction of the subject matter. The Attorney-General cites the case of *Carples* v. *Cumberland Coal and Iron Co.* (240 N. Y. 187), but it is not in point. There, too, the court, in upholding the power of a sheriff to make a levy under a valid attachment, had full and unquestioned jurisdiction.

He cites, likewise, the cases of *Sporza* v. *German Savings Bank* (192 N. Y. 8) and *Martello* v. *Cagliostro* (122 Misc. 306, *supra*). Such cases were decided prior to the holding in the *Finch* case (*supra*), and to the extent that they are relied on as contrary to the principles stated in the *Finch* case, they are not authoritative. The conclusion as to an adjudication of incompetency resulting from a commitment under the Insanity Law (now Mental Hygiene Law) reached in the *Martello* case was expressly disavowed in the *Finch* case, and likewise, it strictly and expressly limited the holding in the *Sporza* case.

Finally, the Attorney-General argues that the relief sought herein is " reasonable." This argument is on a par with that based on "convenience." To permit a general prying into the private property, papers, and effects of a citizen, not accused of any crime or infraction of law, and to allow the State to make abstracts or copies of same — a privilege denied even to the Supreme Court, the historic guardian of incompetents, except through lawfully constituted and responsible committees, and for proper cause shown after judicial determination of incompetency — would appear most unreasonable.

Accepting the holding of the *Finch* case (*supra*), as the court must, it follows that this inmate (except insofar as she may be subject to certain personal restraint for her own good, and except insofar as her acts with reference to her property may be tested in appropriate legal proceedings, as pointed out in the *Finch* case) possesses all of the civil and property rights of any other citizen. To hold that the Legislature may authorize the invasion of such rights, and to permit an examination of her personal property, papers and effects, to the extent indicated, would be tantamount to a holding that the Legislature would be justified in authorizing such examination into the private affairs of a person who is not under the temporary personal restraint

imposed by the provisions of the Mental Hygiene Law, and who is not accused of any crime.

The Legislature is no more at liberty than an individual to disregard the constitutional limitations. (16 C. J. S., Constitutional Law, § 128 and cases cited.)

In my opinion, the statute herein (there being no question here of the proper exercise of the police power upon the ground of public emergency, etc.) impairs the obligation of the contract which was entered into between the safe deposit company and its depositor. One of the express terms of that contract is that no person, other than the lessee, shall have access to the safe deposit box. How may section 51-a constitutionally impair the contractual rights created by that provision? In *Sturges* v. *Crowninshield* (4 Wheat. 122, 197, 198), the question was asked by Chief Justice MARSHALL: " What is the obligation of a contract? and what will impair it? ", and he answered: " A contract is an agreement in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract. * * * Any law which releases a part of this obligation, must, in the literal sense of the word, impair it." (See, also, *Bank of Minden* v. *Clement,* 256 U. S. 126, 128; *Carder Realty Corp.* v. *State of New York,* 260 App. Div. 459, 466; 16 C. J. S., Constitutional Law, § 353 *et seq.*)

" 'The constitutional validity of a law is to be tested, not by what has been done under it, but by what may, by its authority, be done.' " (*Carder Realty Corp.* v. *State of New York, supra,* and cases cited.)

Whatever right or equity the State has herein may be protected by resort to the customary procedure, either by securing the appointment of a committee, or by direct action against the inmate, if subsequently released; and even against her estate, should she die possessed of property while still an inmate.

Motion of petitioner safe deposit company granted. Submit order on notice.